## No. 8267.

### THE STATE OF LOUISIANA VS. MRS. SUSAN BAUM.

33 981
104 254

Act No. 84 of the Legislature of 1878, (authorizing police juries to prohibit the sale of liquors on Sundays, in the various parishes of the State), is violative of Article 114 of the Constitution of 1868, because all the objects of the law are not expressed in its title. Said Act is, therefore, unconstitutional, null and void. Decision in 31 An., 663, overruled.

The same law is also invalid and null, for delegating to the police juries, in the manner and form resorted to, the authority of the General Assembly to legislate, and that of the State to prosecute for the commission of the offence so provided for.

APPEAL from the Seventeenth Judicial District Court, parish of East Baton Rouge. *Sherburne,* J.

*G. W. Buckner,* District Attorney, and *J. C. Egan,* Attorney General, for the State, Plaintiff and Appellee.

*J. H. Lamon* and *Herron & Beale,* for Defendant and Appellant :

First—The Act No. 84, of 1878, undertaking to regulate the observance of the Christian Sabbath, is violative of the Constitutions of Louisiana of 1868 and 1879, and of the treaty of cession of Louisiana. Constitution 1868, Art. 12 ; 1879, Art. 4; Cooley, Constitutional Limitations, 476.

Second—The title of the Act No. 84, Acts of 1878, does not express the objects embraced in the body of the act, and is, consequently, unconstitutional. Cons. 1868, Art. 114; Cons. 1879, Art. 29.

Third—The Act of 1878, No. 84, the Sunday law, if a general law, does not repeal Sec. 9, Act of 1878, incorporation of Baton Rouge, a special law. The inconsistent provisions of a general law do not repeal the provisions of a special law. 13 An. 458; 12 An. 493, 805.

Fourth—The General Assembly is without power to delegate its legislative power to a police jury in the manner in which it is done in the Act of 1878, No. 84. Cons. 1879, Arts. 14 and 15; Cooley, Cons. Lim. 141.

Fifth—The Legislature being prohibited from enacting local laws, cannot indirectly do so, as done in the Act of 1878, No. 84. Cons. 1879, Arts. 46 and 48.

Sixth—Where an Act is unconstitutional under the Constitution of 1879, it is destroyed thereby, although not unconstitutional under the Constitution of 1868. Constitution 1879, Art. 258. .

Seventh—The ordinance of the police jury of East Baton Rouge, prohibiting the "keeping open establishments on Sunday, for the purpose of selling," is not authorized by, nor responsive to, the enabling Act of 1878, No. 84, which authorizes police juries "to make such regulations as they may deem proper in regard to the sale, barter, or exchange of intoxicating liquors or merchandise on Sunday, and to totally prohibit the same on Sunday, if in their judgment necessary."

Eighth—An indictment for statutory offence must describe the offence in the words of the statute, or words certain and equivalent. 5 An. 324. Nothing can be taken by intendment. 10 An. 191.

Ninth—An attempt to commit an offence is not punishable, unless there is a statute making it penal. Under our system, we have no offences except those so declared by statutes. 7 Rob. 252, and many others.

The opinion of the Court was delivered by

POCHÉ, J. This is a prosecution, in the name of the State, and by indictment, for the violation of an ordinance of the police jury of East Baton Rouge, prohibiting the opening on Sundays of places of business for the sale, barter or exchange of intoxicating liquors and all kinds of merchandise.

In a motion to quash the indictment, and in a motion in arrest of judgment, the defendant brings to our consideration numerous defences, but, under the view which we take of the case, we shall notice only the following:

1st. That Act No. 84, approved March 13, 1878, under the sanction of which the ordinance of the police jury was framed, was violative of Art. 114 of the Constitution of 1868, then in force, in this, that said act did not express all its objects in its title, which reads as follows:

"An act to authorize police juries to make such regulations as they may deem proper to prohibit or regulate the sale, barter or exchange of intoxicating liquors or merchandise on Sundays."

After conferring the powers enumerated in the title, the act contains the following provision:

"Violations of all ordinances, duly passed and promulgated, according to the provisions of this act, shall be considered misdemeanors, and the penalties fixed in said ordinances for violations thereof, shall be enforced by indictment or information in any court of competent jurisdiction."

The inquiry suggested by the objection is, therefore, which or how many objects are expressed in the title of the act, and, in the second

place, whether more objects are contained in the body of the act than are expressed in its title?

The language of the title is very plain and unambiguous, and clearly indicates but one object, which is to authorize police juries to make all regulations which they may think proper to regulate or prohibit the sale, barter or exchange of intoxicating liquors or merchandise on Sundays. Nothing in the title indicates in the slightest degree the remotest intention in the law-maker's mind to provide for a special or a new mode of enforcing obedience to such ordinances as might be adopted by the several police juries, in the State, under the powers conferred by the act. No one, reading the title of this act, could infer or imagine from its language that the body of the act contained any provision for the prosecution of violators of the ordinances which, in its title, the act purports to authorize and to sanction, and which may, in the future, be drafted by police juries under its authority.

We take it as an undeniable proposition, that any one, familiar with the peculiar system of our laws in this State, would conclude, on reading the title of this act, and seeing therein no expression indicating an intention to enact a mode of enforcing the ordinances which the title contemplates, that the power of police juries to enforce obedience to such ordinances would be derived from their general powers as conferred under the then existing laws, and notably, from Sec. 2743 of the Revised Statutes of 1870, granting to police juries (paragraph 7) the power "to determine the quantum of fines against all such as shall transgress their regulations;" which power has been continuously exercised since the year 1813, by suits instituted by police juries in their own name, through the proper officer, either of their own selection, or, as the case is at present, by a State officer, the District Attorney, to whom that duty is specially and exclusively entrusted under the law.

But, keeping in view the object as expressed in the title of this act, would not such a reader be utterly surprised, on reading through the act, to find in its body an enactment making the violation of any such future ordinance of a police jury a misdemeanor under the State laws, and providing for a mode of prosecution by information or indictment, or, in other words, in the name and under the authority of the State? Does not such provision contain an entirely separate and distinct object from that which is expressed in the title?

The object, as thus expressed, is to authorize and empower police juries to do certain things. The provision quoted defines the violation of the ordinance, the adoption of which is thus authorized, as a penal offence, and authorizes prosecution therefor, in the name and under the authority of the State.

It is conceded that no law of the State prohibits the sale, barter or

exchange of intoxicating liquors or merchandise on Sundays; the only reference to this subject, to be found either in the Constitution or laws of the State, is in the act now under consideration, and all that the act purports in its title to do, is to authorize police juries to act in the subject matter. And, yet, in the body of the act, we find the power of the State pledged to the enforcement, by prosecution in its name and under its authority, of any and all ordinances, which may be enacted by police juries, either to regulate or to prohibit the sale, barter or exchange of intoxicating liquors or merchandise on Sundays, and this latter object is not expressed in the title. It would, indeed, be difficult to conceive or frame a statute more flagrantly violative of the constitutional requirement, under which every law must express its object or objects in its title.

In a recent case, the Succession of Patrick Irwin, 33 An. 63, we had occasion to examine and review thoroughly, and at great length, the practical application of the constitutional requirement embodied in Art. 114 of the Constitution of 1868; and to expound the reason and the philosophy of the rule, which has been the subject of study, comment and encomium of many distinguished writers on law. And we showed, in that opinion, how easy it was to violate with impunity this constitutional restriction, and that, consequently, our reports teemed with cases growing out of legislative encroachments on those constitutionally forbidden grounds.

A reference to those reported cases, fails to show a more glaring violation of the constitutional inhibition than is presented in the statute now under consideration.

A case somewhat similar is found in 26 An. 142, John I. Adams vs. Asa Webster. In that case, the Court unhesitatingly struck with nullity section 8, of Act No. 47 of 1873, which was entitled "An act to enforce the payment of taxes due the State, providing for the seizure and sale of the property of delinquent taxpayers, and regulating the proceedings against them and against their property and tenants." Among other astounding remedies for the enforcement of the collection of taxes, section 8 contained a provision under which the delinquent taxpayer forfeited his right to be a witness in his own behalf. The Court properly held that this was establishing a new rule of evidence, the object of which was not expressed in the title of the act, and that the provision should, therefore, be considered as unwritten or unconstitutional. In the statute now under consideration, the title of which purports to authorize the police juries to adopt Sunday laws, we find in the act two other distinct and separate objects not expressed in the title, to wit: one defining a new penal statute, and the other providing for a new mode of prosecuting violators of certain police jury ordinances.

We must conclude that those two provisions of Act 84 of 1878, being not expressed in the title of the act, are unconstitutional, null and void, and could not be the lawful authority for the indictment in this case, and that the prosecution for such an offence in the name of the State was illegal.

We are aware that in the case of the State vs. Bott, 31 An. 663, our immediate predecessors, disposing of a similar objection to the identical ordinance out of which this case sprung, reached a different conclusion, and maintained the constitutionality of the very provision which we feel compelled to annihilate. But with all the respect which we entertain, and the deference which we have never failed to show, for the opinions of our learned brothers of that distinguished Bench, we are reluctantly constrained to differ with them on this point, and to refuse to follow them, in the disposition they made of this important constitutional question, in the following language, which we quote from their decision: " The title of the act is sufficiently comprehensive. It indicates very clearly its whole purpose. No one after reading it could fail to be informed of the object of the legislation, and that is the intent of the constitutional provision upon that subject."

It is evident to our minds that the point had not been pressed by counsel, and did not receive the very serious consideration of the Court.

In our researches and study on this question, we were mainly guided by a wise and salutary principle universally recognized, that laws in derogation of common right must be strictly construed and cannot be extended beyond their clear and precise import.

Of this character, are, in our opinion, all laws seeking to restrain persons in their inherent and constitutional right to pursue, on any day, avocations or trades which are not wrong in themselves, or not forbidden on other days; and of that class we consider all laws tending in the least, in their import, to infringe upon the salutary doctrine of the complete separation of church and state; a doctrine which has dictated the brightest page of American history, and has always been the distinguishing feature of American freedom.

We do not wish to be understood as saying that the State Legislature is powerless to enact a general State Sunday law, which has not yet been attempted in this State, and on which, therefore, we are not called upon, and would not be justified, to express an opinion.

2d. Another objection to this act, urged by defendant, in charging that the General Assembly is without power to delegate its legislation to a police jury, in the manner and form resorted to therein, is entitled to serious consideration, and would of itself be fatal to the validity of that statute.

While the Legislature fails to prohibit, in the name of the State,

the sale, etc., of liquors or merchandise on Sundays, it grants full power so to do to police juries in their parishes; and proffers the power of the State to champion the ordinances to that end, which may be adopted by any police jury. In other words, the Legislature engrafts a penal statute with a suspensive condition, to wit: the passage of certain ordinances by the various police juries of the State, and thus, under its practical operation, the State in its name, at the bidding of the police jury of East Baton Rouge, prosecutes a resident of that parish for the performance of an act which is not forbidden in the parish of St. James, wherein the identical resident of East Baton Rouge can do the same act with perfect freedom and with absolute immunity from any criminal prosecution in the premises. Cooley, Const. Lim., p. 141.

We might multiply reasons in support of that point, but we consider that we have already given sufficient reasons to justify our conclusion.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and that the indictment found against the defendant be quashed and set aside, and that the defendant be discharged, at plaintiff's costs.

## DISSENTING OPINION.

TODD, J. I cannot concur in the decree rendered in this case, and, as briefly as the subject will admit, I will give the reasons for my dissent therefrom. In doing so, I shall confine myself to the consideration of that feature of the act in question which relates to the sale of intoxicating liquors on Sunday, as that presents the sole issue in this case.

The reasoning of the majority opinion, marked as it is by ingenuity, force and vigor, has failed to convince me that the statute in question contravenes the provision of the Constitution of 1868 bearing on the title to the act, and which the opinion, at the outset, proposed only to consider as alone sufficient to justify the decree rendered.

Another objection to the act was, however, found and discussed and declared equally fatal to its validity; and this second objection I will also notice in its turn.

1. The title of the act in question, by its terms authorized and covered the absolute prohibition of the sale of intoxicating liquors on Sunday, provided by a section of the act. The constitutional objection urged, is to that part of the act which declares the penalty and provides for the punishment of violations of the ordinances to enforce this prohibition, by indictment or information in the name of the State, contending that such mode of enforcing the penalty is not expressed in the title of the act, in conformity to the constitutional requirement that " all the objects of an act must be expressed in the title."

To my mind, it seems clear that the act had but one object, and that was to regulate or prohibit the sale of intoxicating liquors on Sunday, in such parishes or communities as might desire the restriction. In other words, it was designed to stop the sale of whisky, etc., on Sunday, in any parishes where public sentiment demanded it. To confound the object of a law with the measures for attaining or securing that object, seems to me a confusion of terms, confounding the law itself, its spirit and essence, with the mere sanction of the law. It is to argue that the *intent* of the Legislature in passing the act was *not* to regulate or prohibit the sale of whisky on Sunday, but its OBJECT was to create or declare a new offence and get offenders punished for committing it.

It is suggested in the opinion of the Court, that a reader of the title of the act would be surprised to find in the body of it the clause in question. On the contrary, it seems more reasonable to me to suppose that such reader, appreciating fully the purpose of the act, disclosed in the title, and the difficulty of fully consummating that purpose, and the power required to that end, would rather be surprised, should he fail to discover in an act of this kind, under a title so broad and comprehensive, any adequate provision for enforcing it, or punishing its violation; and would be alike disappointed, should he find any less efficient measure to carry out the object of the act than that contained in this. He would, in such event, very naturally conclude that the law-makers of the State had indulged in a very useless and fruitless piece of legislation.

To me it appears that the penalty declared, and mode of punishment provided, was not only strictly germane to the object expressed, but, in fact, an essential adjunct to such object, without which that object would be meaningless and lifeless. We are supported in this view of the subject by the decision of our predecessors, Chief Justice Manning being the organ of an unanimous Court, where this precise question was at issue, on an appeal from a judgment rendered in a similar prosecution, under the same law and ordinance, in the same parish, and where the identical objection *totidem verbis* was made to the constitutionality of the act; and though the language of that decision was quoted in the majority opinion, it is so pointed, comprehensive and confirmatory of my views, that I reproduce it here, as follows:

"The title of the act is sufficiently comprehensive. It indicates very clearly *its whole purpose*. No one after reading it could fail to be informed of the *object* of the legislation, and that is the *intent* of the constitutional provision upon that subject." (The italics are mine). State vs. Bott, 31 An. 663. To that opinion I adhere.

The construction and meaning of the clause in question, as there given, is in strict conformity to and fortified by frequent decisions of

this Court. 9 An. 329, 350; 11 An. 54, 145, 671; 13 An. 301, 399; 15 An. 297; 26 An. 675, 708; 27 An. 415.

2. Another objection to the law, and which is also pronounced fatal to it, is "that the General Assembly was without power to delegate its legislative power to a police jury in the manner and form resorted to therein."

I regard this objection as more clearly untenable than the other.

All powers that are wielded by the police juries of the parishes, are delegated powers, that is, powers originally possessed by the State, but which, for the purposes of securing the peace, good order and well-being of communities, it has transferred or delegated to the local governments of such communities. To the extent of the powers thus conferred, the parochial authorities become the special legislatures of the parishes over which their authority respectively extends. No constitutional inhibition is cited against the delegation of such powers by the State to these minor legislative bodies, and I apprehend that none can be found. It is certain that such general delegation of powers over various matters, has been made in this State from time to time, and its legality has been so uniformly sanctioned by judicial authority as seemingly to place it beyond controversy. 12 An. 169, 554 ; 27 An. 710. And we believe such is the case in every State. In fact, such delegation may be justly regarded as essential to the effective police of communities, to the complete success of local self-government, under our system of State polity, the wisdom of which has been confirmed by long practical experience.

In the present instance, in consideration of the fact that the entire State might not be prepared for the "advanced ideas" embodied in the act in question, there was a marked propriety in this delegation of its powers, providing as it did, a local option touching the repressive measures contemplated by the statute, in order that the prohibition authorized, might be enforced in one parish,—the parish of East Baton Rouge, for instance,—where public opinion demanded it, but not in the parish of St. James,—or other parish,—where the popular sentiment might be opposed to it.

If such delegation of power by the State to the parishes is warranted when it has been made, and it is certain or probable that the power delegated cannot be successfully exercised, with their limited means and appliances, and the importance and gravity of the subject demands it, I see nothing illegal or improper in the State interposing and lending its power to render the enforcement of the delegated authority effective, and thus insure the accomplishment of the end in view. Otherwise, it might often happen that such grants of authority would prove vain and nugatory. I certainly see nothing in the Constitution to prohibit the

State from thus "championing" measures originated by itself, to be inaugurated and launched by agencies created and directed by its own authority. Surely, it is a species of aid which the State has often rendered, and its constitutional right to do so has seldom, if ever, been seriously questioned. For instance, the State authorizes the parishes and other municipal corporations to impose licenses for the sale of intoxicating liquors, and to withhold licenses under certain conditions, and declares it an offence to sell without such license, and prosecutes those thus offending, in the name of the State, by information or indictment. R. S. 1211, 1212, 1214. Again: The State has conferred on police juries full control over the making and repairing of roads, and the repair and protection of levees, and prosecutes in its own name overseers of roads who fail to discharge their duties under the road ordinances. R. S. Secs. 3364, 3381. And these prosecutions are pledged by the State in advance, and are subject to the contingencies of the commission of the offence, or "suspended" till such event.

We might multiply examples, but it is unnecessary, since it would be the recital of facts familiar to every one. In view, however, of these facts, and the unquestioned exercise by the State of the power referred to, and in the manner shown, and in the absence of any precedent against it, I cannot readily conceive how this objection is fatal to the act.

3. I am equally at a loss to understand how anything in this act can be construed to relate in any way to the inhibition of the Federal Constitution touching the separation of church and State; and still more so, to perceive how selling whisky on Sunday or any other day is connected with the establishment of religion, or, indeed, has anything whatever to do with the subject of religion or religious liberty.

This feature of the case presents no new question. The power to deal with the subject of the sale of intoxicating liquors, whether on Sunday or any other day, has been held to pertain to the general police power of the State, which can be wielded to accomplish the objects embraced in the statute in question. In the language of a distinguished jurist and law writer: "The police power of a State, in a comprehensive sense, embraces its system of internal regulation, by which it is sought, not only to preserve the public order and to prevent offences against the State, but also establish for the intercourse of citizen with citizen those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a like enjoyment of rights by others." Dillon, Cons. Lim., 572.

Another eminent judge uses this language:

"This police power of a State extends to the protection of the lives, limbs, health, comfort and quiet of all persons; and by this power per-

sons and property are subject to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity of the State; of the perfect right in the Legislature to do which, no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned." Redfield, C. J., Thorpe vs. Rutland, 27 Vt. 149.

The right to regulate or prohibit the sale of liquors, regardless of the day, is properly held to come within the just scope of this power. Dillon 476; State vs. Bott, 31 An. 663; Fralickson vs. Mayor, 40 Ala. 725; Specht vs. Coru, 8 Penn. St. 212; Charleston vs. Benjamin, 2 Stat. 508; Bloom vs. Richards, 2 Ohio St. 387; Hudson vs. Geary, 4 R. I. 485.

A few considerations will satisfy any reasonable mind that, restricting the prohibition of a traffic in liquors to Sunday, does not necessarily imply the slightest discrimination relative to religious creeds and beliefs, or the least design to interfere with them.

It is a conceded fact that all nations possessing any degree of culture and enlightenment, by law or by custom, or both, devote one day in the week to rest, in which a general abstention from all physical labor is observed. This seems to be done in obedience to a great natural law, and is now universally regarded as a wise rule in the social economy, conducive to health and comfort, and to the preservation and prolongation of animal strength and vigor. This custom, if it be of scriptural or religious origin, is adhered to by all classes, the depraved and vicious as well as by the virtuous and good, regardless of its origin, though, as a matter of fact, the same day, Sunday, has been adopted almost universally as the weekly holiday. It naturally follows from the general idleness that characterizes this day, that it would become, without some wholesome restraint, the occasion for all the mischiefs and disorders which idleness always breeds. No one will deny that the liberal use of intoxicating liquors on that day by the crowd of idlers, composed in part of the worst classes of society, would necessarily increase the tendency to disorder and lead to turbulence, immorality and crime. Hence, on that day above all others, it was apparent to legislative wisdom that there was a necessity for the curb of the law,—the same necessity that has induced a sweeping prohibition against the sale of whisky on election days.

Look at the actual facts as they existed at the time the act in question was passed. In the rural districts of the State crowds would flock on Sundays to town and cross-road stores and groceries, composed largely of that class which had not yet learned to enjoy with sobriety and moderation their newly acquired freedom, but on the contrary, believed that the full fruition of that freedom and demonstration of their title to it, required a free indulgence in all those excesses that distin-

guished the hoodlums and rowdies of the white race. From this cause many of our country villages, once noted for peace and quiet, the very centres of virtue and refinement, were being converted on Sundays into veritable pandemoniums of vice, rowdyism and crime. Surely it was time, and the necessity was present, to an enlightened and moral—not to say Christian—people, to crush out such a monster evil. This act was intended to do so; and it is notorious that in some places its salutary operation has worked great reforms.

It is true that Sunday is observed by a large and very respectable class of citizens as a day of religious worship, and it is on account of this fact that it is sought to impart to the act in question a religious aspect, and show in it the alleged union of church and State. We cannot well see, however, that such a usage, and for a legitimate and commendable purpose, should render the act amenable to censure, and impart a character to it fatally obnoxious. Surely, if people do go to church on that day, it is a legal right they have, and one which carries with it the right to go to and return from their houses of worship without being liable to be insulted and shocked by sights and sounds of drunkenness on the way, or have the services of their sanctuaries disturbed by the same. The law-maker has recognized their right to protection by punishing all disturbers of peaceable assemblies, including religious assemblies. If this can be legally done, and such offenders legally punished, I cannot see how objections can be consistently urged against the suppression by law of the causes—the closing of the very fountains themselves—from which these disturbances would most likely flow.

For these reasons, I am constrained to dissent from the conclusions reached by the majority of the Court.