Board of Aldermen of Opelousas vs. Norman and Haas.

## No. 13,051.

BOARD OF ALDERMEN OF OPELOUSAS, LA., VS. JOHN R. NORMAN AND JOHN A. HAAS, (CONSOLIDATED.)

### SYLLABUS.

1. The fact that a particular use of property is declared a nuisance by a town ordinance, does not make it such unless it is *in fact* so and is embraced within the common law or statutory idea of a nuisance.

2. The thing or act complained of must come within the legal notion of a nuisance, and where it does not, no authority to remove or abate is derived from the ordinance declaring it a nuisance.

3. But where a thing or act complained of is a nuisance, or *must necessarily* become such, a municipal corporation may, in the exercise of the police power, make regulations for its suppression and prohibition.

4. Open cattle yards and pens within the corporate limits, where cattle in numbers are congregated and kept for feeding and fattening purposes—. HELD: To belong to that class of things which "must necessarily" become nuisances, and may be abated under a general prohibitive ordinance declaring it a nuisance to so keep cattle within the corporate limits.

ON APPEAL from the Mayor's Court of the Town of Opelousas. *S. L. Hebrard, J.*

*Lucius G. Dupre* for Plaintiffs and Appellees.

*Kenneth Baillio* for Defendants and Appellants.

Submitted on briefs February 8, 1899.
Opinion handed down March 20, 1899.

The opinion of the court was delivered by

BLANCHARD, J. The Board of Aldermen of the town of Opelousas adopted the following ordinance:

"*Resolved*, That from and after this date it shall be considered

a nuisance for any person or persons to keep or feed horned stock in a quantity of twenty-five or more, for marketing, shipping, or any other purpose, within the corporate limits of the town of Opelousas.

"Be it further resolved, That any person or persons violating this ordinance shall be fined twenty-five dollars and costs for the first offence, and one hundred dollars and costs for the second offence, said fine and costs to be collected by the mayor in the same manner that other fines and costs are collected."

Affidavits charging violation of the ordinance were made against defendants, warrants issued, they were arrested, tried before the Mayor's Court, convicted and fined twenty-five dollars each.

Both appeal. For the purpose of appeal their cases are consolidated by consent.

The appeal is based on Art. 85 of the Constitution of 1898, under which the appellate jurisdiction of this court extends to all cases in which the constitutionality or legality of any tax, toll or impost whatever, or of any fine, forfeiture or penalty imposed by a municipal corporation, shall be in contestation whatever may be the amount thereof.

The contention of appellants is that the municipal authorities exceeded their power in adopting the ordinance in question; that the same is *ultra vires*; and that the fine imposed under its provisions is illegal and unconstitutional.

The contention of the town authorities is that the ordinance and its enforcement is a proper exercise of the police power in respect to the protection of health, safety and comfort of the inhabitants of the town.

It will be observed that the keeping and feeding, itself, of horned cattle within the corporate limits is not declared by the ordinance a nuisance and prohibited; but the keeping and feeding of cattle *in numbers* is. It is declared that such keeping and feeding of cattle in numbers aggregating twenty-five head or more, *is* a nuisance.

The ordinance, as to the keeping and feeding of cattle in such numbers within the corporate limits, is, thus, *prohibitive,* not *regulative.*

Just there comes in the objection and contention of defendants.

They dispute the power to enact a prohibitive ordinance on this subject. They acknowledge the power to enact a regulative one.

In such a case as this the jurisdiction of this court is confined to an inquiry into, and determination of, the question of legality or constitutionality of the ordinance imposing the fine, and for this pur-

47

*pose* both the fact and the law of the case are open to examination and decision. But the extent to which this examination into the facts may go, *does not include the evidence on which the Mayor's Court founded its judgment as to the infraction, vel non, of the ordinance.* With the facts of the case, in this sense, tending to show guilt or innocence of the accused, we have nothing whatever to do. State vs. Callac, 45th La. Ann. 29; State vs. Dean, *Ib.* 441; State vs. Fourcade, *Ib.* 721. The examination, therefore, which we shall make of the facts of this case will be limited accordingly.

It appears that defendants have a pen or pens located within the corporate limits of the town; that the number of cattle kept there were, usually, from 100 to 150 head; that these cattle were kept there for the purpose of feeding and fattening; that the pens are in close proximity to a cotton seed oil mill, from which cotton seed meal, or cake, and hulls are procured for feeding the stock; that the pens are distant not more than 300 or 400 feet from private residences; that they drain into a small stream or bayou which runs through a part of the town; that the waters and banks of this stream are, and liable to be, unwholesomely affected by the same; that the pens are not kept in such condition as to prevent this; that there are no appliances for the removal of the urine and droppings of the cattle kept there and the pens are not so arranged that the droppings and urine can be removed daily; that where cattle are kept standing on the ground it is impossible to remove the urine, which more or less becomes absorbed into the soil, and that it is not practicable to deodorize urine where cattle are fed on the ground.

We construe the ordinance to mean that no person or persons shall keep twenty-five, or a greater number of cattle, *in any one place* at a given time within the corporate limits, and to declare the keeping of twenty-five head or a greater number, in any one place, a nuisance. We are asked to declare it beyond the authority of the municipality to enact such an ordinance.

We cannot do so.

In saying this we fully appreciate that the fact that a particular use of property is declared a nuisance by an ordinance of a city or town does not make that use of property a nuisance unless it is *in fact* so and is embraced within the common law or statutory idea of a nuisance.

Wood's Law of Nuisance, Section 744.

It is fully conceded that the thing or act complained of must come within the legal notion of a nuisance and where it does not, no authority to remove it is derived from the ordinance declaring it a nuisance. Ib. Section 744, and note.

But where a thing or act complained of is a nuisance *per se,* or *must necessarily* become a nuisance, a town or city may, in the reasonable exercise of the police power, make regulations for the suppression and prohibition of the same.

When the thing sought to be abated is clearly a nuisance, one affecting or liable to affect the health of the town, the abatement may be made by the authorities of such town.

The possession of very extensive powers for the abatement of nuisances detrimental to public health and safety exists, as part of the police power, in municipal corporations. 11 La. Ann., 245; Dillon's Mu. Cor., Vol. 1, Section 141.

Wherever protection to the lives, limbs, health, comfort and quiet of the citizen, and to his property, is needed to be extended, there the police power reaches; and in respect of acts such as that complained of herein it rests upon the principle embodied in *sic utere tuo, ut alienum non laedas*—an accepted maxim alike of the civil law and the common law.

Open cattle yards and pens, located and maintained as these are within the limits of an incorporated town, where cattle in numbers are kept for a long period of time to be fed and fattened for market, belong, we think, to that class of things which "must necessarily" become nuisances. It is within the ordinary experience of every observant man, who has had opportunities for judging, that they do, and the facts of the case at bar show that the pens in question are such. They are not safeguarded by the conditions, appliances, equipment, etc., to prevent their becoming offensive, to obviate the noxious exhalations and noisome smells incident to such places, nor even to minimize the same. The drainage from the pens pollutes the stream which runs through the town and is liable to affect the health of the locality.

So, we think it established that the particular use of the property in question, declared by the ordinance to be a nuisance, is *"in fact,"* as well as in law, a nuisance.

Being such, the police power of the municipal corporation, operat-

ing through the ordinance attacked, and its enforcement, reaches it and abates it.

It being shown that the pens as now located, arranged, equipped and maintained, *are* nuisances, it is no argument against the ordinance to say that under proper arrangement, equipment *and regulation* the use to which the property is now put *may become* innoxious and unobjectionable. See A. & E. Enc. of Law, Vol. 1, p. 65, 2nd ed.

If it be possible for these pens, harboring a large number of cattle, to be put in such condition as not to affect injuriously the health, the comfort, the quiet of the town, and they are so put, a case will be presented with respect to which the ordinance may perhaps have no application, and were such a case now before us a different result might be reached.

We find no sufficient grounds for disturbing the judgment appealed from and the same is affirmed.