Statement of the Case.
MONROE, C. J.
Defendant has appealed from a conviction and sentence under an ordinance of the town of Eros, reading, in part:
“That, on and after January 1, 1915, all pool rooms and billiard halls, * * * are declared to bs a public nuisance, and it shall be unlawful for any person * * * to operate, within the limits of said town, for gain or for gambling-purposes, any pool or billiard tables, or maintain any public hall or room where said games may be played.
“See. 2. * * * That any one violating the-provisions of this ordinance shall, upon conviction before the mayor of said town, be fined in the sum of not more than $25.00, or less than $5,00, or be imprisoned not more than 25 days,, or both fine and imprisonment, at the discretion of the mayor. * * * ”
The authority for the enactment of the ordinance is said to be found in the general statute (Act 136 of 1898, as amended by Act 111 of 1912) under which the town of Eros and many other municipal corporations have been established, and which reads, in part, as follows:
“Sec. 15. * * * That the mayor and board of aldermen of every city, town, and village, shall have the care, management, and control of the city, town and village, and its property and finances, and shall have power to enact ordinances for the purposes hereinafter named, and such as are not repugnant to the laws of the state, and such ordinances to alter, modify and repeal; and they shall have power : * * *
“Twenty-fourth. To regulate,” control and “suppress, and impose a privilege tax on all circuses, shows, theatres, billiard tables, bowling alleys, concerts, itinerant sellers of medicine, corn doctors, pet bear exhibitors, exhibitions for-pay, fortune tellers, cane or knife racks, and like devices, gift enterprises, lung testers, museums, menageries, feather renovators, muscle testers or developers, peddlers, flying jennies, pistol or shooting galleries, theatrical exhibitions, ten pin alleys (without regard to the number of pins used) skating rinks, roller coasters and other like things.”
“Thirty-first. To pass all ordinances, and to enforce the same by fine not to exceed $100, or imprisonment not exceeding '30 days, or both.”
Defendant’s counsel reserved a bill of exception to the overruling of his motion to quash the affidavit and another bill to the-overruling of his objection to the introduction of evidence; the grounds relied on in-both bills being that the ordinance is ultra vires and illegal, and was enacted arbitrarily, without notice, at an insufficiently attended meeting of the board of aldermen, and without having been read section by section. The statement of the mayor, attached to the bills, is:
“I overruled the motion to quash” (also the-objection to the evidence) “for the reason that ordinance No. 64 was passed at a regular meeting of the board of aldermen, held on the first Tuesday in November, the date and time fixed by *345 law (Act 136 of 1898, § 22). A quorum was present and the ordinance unanimously adopted "by those present. The words ‘pool’ and ‘billiards,’ as used in the ordinance, are synonymous. ‘Pool’ and ‘pool tables’ refer to a game played upon tables without pockets, each of them being- a form of billiards. Act 136 of 1898, § 15, par. 24, as amended by Act 111 of 1912, authorizes towns to suppress ‘billiard tables,’ which, I think, authorizes the ordinance in question.”
The argument on behalf of defendant, as presented in this court, is predicated upon the following propositions (stating them in substance), to wit: That the town was without authority to pass the ordinance in question, for the reasons: That the power (conferred by the statute) to suppress billiard tables does not include the power to suppress pool tables; that, should the court be of a different opinion, nevertheless the power so conferred was not intended to be used arbitrarily, and does not authorize the suppression of any legitimate business mentioned in the statute upon merely calling it a nuisance, unless it has, in fact, become a nuisance by reason of the manner in which it is conducted ; that the business of conducting a pool room is not a nuisance, per se; that, whether the pool room conducted by defendant has become a nuisance is a question which should be determined by the board of aider-men, after a full hearing; and that, so long as the state has not, itself, prohibited • the operation of pool rooms, it cannot confer the authority so to do upon a municipal corporation.
Opinion.
[1] The proposition last above stated implies an attack upon the power of the General Assembly to enact the statute under the supposed authority of which the ordinance here in question was adopted, if it be construed to confer the power asserted under it; which means that, as thus construed, the statute would be unconstitutional; but that question was not raised in the pleadings or passed upon by the lower court. Moreover, in the brief, filed on behalf of defendant, his learned counsel, after citing several decisions of this court, as holding that “a municipality is without power to suppress that which it may regulate,” and quoting the ordinance in question, proceeds to say:
“The sole question presented to this court is whether or not an ordinance, passed by a town council, declaring pool rooms a nuisance, is legal. We submit that the ordinance suppressing- the operation of pool rooms, for 'gain, is illeg;al, null, and void, and that the town council is without authority to pass such an ordinance.”
It is, then, contended, in support of the proposition, as thus stated, that the authority to regulate, control, suppress, and impose a privilege tax on the various businesses and occupations enumerated in the act of 1898 (as amended) does not extend to “pool tables,” which are not specifically mentioned, and (it is said) are not included in the term “.billiard tables,” but that, even though a different view be taken, as to that point, the authority to “suppress,” as thus granted, was not intended to be exercised arbitrarily, by merely declaring any businesses or occupations mentioned to be a nuisance; and “that municipal councils have no power to suppress a legitimate business, unless the Conduct of that business is such as to render it, in fact, a nuisance.”
The learned counsel then carry their argument beyond their pleadings, and beyond “the sole question presented to this court,” by saying:
“We question the power of the Legislature to delegate absolute authority to a municipality to prohibit the operation of a legitimate business by the mere act of passing an ordinance prohibiting such business. While the Legislature fails to prohibit the operation of billiard and pool rooms, in the state, it cannot grant the absolute power to a municipality to prohibit such business, in their localities. See State v. Baum, 33 La. Ann. 981, 985. It makes no difference how much power is delegated to a corporation, it can act only within legal' bounds;' it cannot legalize a nuisance, nor, per contra, can it define the doing of a thing a nuisance, unless it is, in reality, a nuisance. The business of conducting a pool room is not a nuisance, per se, nor is it likely to become one, and, even though the town of Eros were clothed with all the pow *347 er claimed for it, it would still be without power to say that the operation of pool rooms is a nuisance per se. Its resolution cannot make it so; whether or not a particular pool room is conducted in such a way as to become a nuisance, in fact, is a matter to be considered by the council, after a full hearing and subject to review by the courts, and not by general ordinance prohibiting all pool rooms. Conducting pool rooms is a legitimate business, and is so recognized all over the land. Pool is played for pleasure and pastime,” etc.
“Pool” is defined by lexicographers and law writers as follows:
“A game at billiards, in which each of the players stakes a certain sum, the winner taking the whole; also, in public billiard rooms, a game in which the loser pays the entrance fee for all in the game.” Webster’s New Int. Diet., verbo Pool, 2, a.
“A game played on a billiard table with six pockets, by two or more players.” Cent. Diet. & Ene. verbo Pool,2 2.
“Applied to games; one of the various games played on a six-pocket billiard table; a game played on a billiard table with six pockets, by two or more persons; a kind of billiards.” 31 Cyc. 911, 912, verbo “Pool”
—with citations in notes, as follows:
“68. The game is a mode of gaming. See 20 Cyc. 887, text, and notes 79, 80.
“69. Standard Diet., quoted in State v. Johnson, 108 Iowa, 245, 247, 79 N. W. 62.
“70. Century Diet., quoted in State v. Johnson ; * * * Clearwater v. Bowman, 72 Kan. 92, 94, 82 Pac. 526.
“71. Century Diet., quoted in Clearwater v. Bowman. * * *
“72. See Encyclopaedia Brit.; Webster, Int. Diet. — both cited in State v. Johnson. !|! * *
“Pool Room. — A room in which jiools on races, etc., are sold. * * * In another sense, a room where the game of pool is played — [citing Goytino v. McAleer, 4 Cal. App. 655, 88 Pac. 991], See Gaming, 20 Cyc. 894.”
Under the title “Gaming” to which we are thus referred, we find the following:
“ ‘Gaming,’ which is substantially the same as ‘gambling,’ has been defined to be a contract between two or more persons by which they agree to play, by certain rules, at cards, dice, or other contrivance, and that one shall be the loser and the other the winner. * =:= * It is well settled that state Legislatures may enact statutes regulating or prohibiting gaming, and that municipalities, when duly authorized so to do, [may] pass ordinances for this purpose. * * * When general words of prohibition follow an enumeration of particular games or devices, which are prohibited, such general words must be construed ejusdem generis with the games, or devices which are specifically named. * * *' Other games, contests or events which have been themselves prohibited by statute, in different jurisdictions, or on which betting has been prohibited by express statutory designation, or which have been held to be included within general statutory inhibitions against gaming, are, Keno, rondo, pico, lotto, equality, chuek-a-luek, fan-tan, rouge et noir, bagatelle, thimble, plucking matches, crack loo, lotteries, gift enterprises^ coupon competitions, policy, billiards, pool, pin pool, base ball, foot races and shooting matches.” 20 Cyc. 877 et seq., and notes.
In a still more recent, and admirably prepared, work we find the following:
“Those exercising useful trades and occupations do not occupy the same relation to society as those engaged solely in giving amusement to the public, and a much larger discretion should be given in regulating the latter than the former. Thus, keepers of billiard tables are not usually recognized by the state as exercising a useful occupation.” 6 R. C. L. p. 220, § 213.
“Any practice or business the tendency of which, as shown by experience, is to weaken or corrupt the morals of those who follow it, or to-encourage idleness instead of habits of industry, is a legitimate subject for regulation or prohibition by the state. On this principle, it is concededly within the police power of the state to suppress gambling in all its forms, including horse racing, book making and pool selling, keeping pool tables for hire, lotteries, buying and selling stock on margins, and dealing in options or futures,” etc. Id., pp. 207, 208, § 201.
_ “In order to sustain legislation, under the police power, the courts must be able to see that its operation tends in some degree to prevent some offense or evil, or to preserve public health, morals, safety and welfare, and if a statute discloses no such purpose and has no real or substantial relation to these objects, or is-a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby to give effect to the Constitution. Only in cases, however, where the Legislature exceeds its powers, will the courts interfere or set up their judgment against that of the Legislature. When an act has a real and substantial relation to the police power, then, no matter how unreasonable or how unwise the measure itself may be, it is not for the judicial tribunals to avoid or vacate it upon constitutional grounds,” etc. Id., p. 242, | 230.
“Where the police power has been delegated by the Legislature to a municipal corporation, the same general principles governing the reasonableness of the legislative enactments have application, and the courts may inquire into the reasonableness of the measures enacted by the municipality. It is important to distinguish between the common-law right of courts to review the question as to the reasonableness of ordinances and by-laws of municipal corpora *349 tions, and the right of the judiciary to scrutinize the reasonableness of enactments of the legislative department of a city as well as of a state made in the exercise of the police power. Hence it is a general rule that a municipal ordinance must be reasonable to be valid, and that the reasonableness of a municipal ordinance is a proper subject for judicial inquiry, irrespective of any question as to the right of the judiciary to pass on the reasonableness of regulations enacted under the police power. On the other hand, whenever a municipal corporation is expressly authorized by legislation to enact ordinances in execution of the police power, such ordinance stands on the same basis as a statute, and its reasonableness or unreasonableness is not a matter for the courts except as such question would bear on the constitutionality of a statute of the same nature. In other words, as to such ordinance, the doctrine of the judicial review of the reasonableness of the by-laws of municipal corporations has no application. In accordance with the general principles governing the determination of the reasonableness of legislation, the question of the reasonableness of an ordinance is one in the first instance, for the determination,of the body enacting it. It is not the province of the courts, except in clear eases, to interfere with the exercise of the power reposed by law in municipal corporations to pass ordinances within the proper domain of the police power.” Id., p. 244, § 231.
[2] Beverting now to the grant contained in section 15, subd. 24, of Act 136 of 1898, we are of opinion that, though “pool,” “pool tables,” “pool rooms,” and “pool halls,” are not specifically mentioned therein, they are included in the term “billiard tables,” which is used, since “pool tables” are “billiard tables” with pockets, which have been appropriated to the particular game, or form, of billiards called “pool,” even though-.the game of billiards, proper, which was formerly played upon such tables, is now played upori tables without pockets. Moreover, the paragraph in question, after the completion of its enumeration, concludes with the words, “and other like things,” and the operation of pool tables, “for gain or gambling purposes,” and the “maintenance of public halls, where such games may be played,” are ejusdem generis as the things which are enumerated, and hence fall within the same prohibition. Defendant’s counsel cites State v. Marshall, 50 La. Ann. 1176, 24 South. 186, State v. Owen, 50 La. Ann. 1181, 24 South. 187, Board v. Norman, 51 La. Ann. 736, 25 South. 401, De Blanc & Landry v. Mayor, 106 La. 680, 31 South. 311, 56 L. R. A. 285, City of New Orleans v. Lagasse, 114 La. 1055, 38 South. 828,. and City of Shreveport v. Leiderkrantz Society, 130 La. 802, 58 South. 578, 40 L. R. A. (N. S.) 75, as supporting the contention thát the town of Eros was unauthorized to suppress, as a nuisance, the operation, “within-the limits of said town, for gain or for gambling purposes,” of any pool table or the maintenance of any hall in which such game may be played, unless, and' until, it had been shown that such table, as operated, or such hall, as maintained, was, in fact, a nuisance. The cases of State v. Marshall and State v. Owen presented the question of the right of a railroad company to park its cars upon its own property; the case of Board v. Norman, the question of the right of a citizen to keep or feed more than 25 head of horned stock within the limits of a town; the case of De Blanc & Landry v. Mayor, the question whether, a particular business being licensed by a municipal corporation, it was competent for the corporate authorities to single out particular individuals, engaged in that business, who had paid the required license, and declare their business to be a nuisance, without its being pretended, or shown, that it was in fact a nuisance; the case of City of New Orleans v. Lagasse, the question of the right of the authorities to single out and abate, as a nuisance, in fact, by means of a writ of injunction, the operation of a planing mill, cistern factory, and other wood-working machines; and the case of City of Shreveport v. Leiderkrantz Society, the question whether, not having declared all bowling alleys to be nuisances, the city authorities could single out that of the defendant and so declare it, though, as this court held, it was not, in fact, a nuisance. It is evident, therefore, that neither of the cases cited has. *351 any appreciable bearing upon the case here presented. The learned counsel also cites the case of State v. Baum, 33 La. Ann. 981, in support of the contention that, so long as the state, itself, fails to prohibit a particular business, it cannot authorize a municipality so to do. As we have stated, the question of the power of the Legislature is not properly in this case; but, since it has been, incidentally, considered, in connection with the question of the power of the municipality, we may add that the ruling, to which counsel refers, was unnecessary to the decision of the case in which it was made, and, having been added, after the case had been in effect decided, upon another point, did not, apparently, receive the attention which would otherwise have been given to it. It is at variance with the general principles governing the creation of municipal corporations, and with the prior and subsequent jurisprudence of this court, and of the courts at large, upon that subject, and cannot therefore be sustained. Milne v. Davidson, 5 Mart. (N. S.) 410, 16 Am. Dec. 189; Municipality v. Wilson, 5 La. Ann. 747; City of New Orleans v. Miller, 7 La. Ann. 651; Kennedy v. Phelps, 10 La. Ann. 227; Guillotte v. New Orleans, 12 La. Ann. 432; City of New Orleans v. Lambert, 14 La. Ann. 247; Blayor, etc., v. Gerspach, 33 La. Ann. 1011; State v. Harper, 42 La. Ann. 315, 7 South. 446; State v. Garibaldi, 44 La. Ann. 809, 11 South. 36; City v. Schulsinger, 113 La. 9, 13, 14, 36 South. 870, 2 Ann. Cas. 69; Town of Ruston v. Perkins, 114 La. 851, 38 South. 583; Re Jones, 4 Okl. Cr. 74, 109 Pac. 570, 31 L. R. A. (N. S.) 548, and notes, 140 Am. St. Rep. 655; Dillon’s Mun. Corp. (4th Ed.) vol. 1, p. 385, § 308; Id., p. 436, § 368; Id., p. 450, § 375; Id., p. 454, § 579; Cooley, Const. Lim. (6th Ed.) pp. 138, 226, 742.
Another view of the case, here presented, Is that defendant was prosecuted under an ordinance which makes it unlawful for “any person * * * to operate, within the limits of said town, for gain or gambling purposes, any pool or billiard tables,” etc., and, for aught we know, was convicted upon evidence showing that he was operating such tables for both of the purposes mentioned, in which case it will hardly be argued that his business was a legitimate one, or that it was incompetent for the town authorities to suppress it. Constitution, art. 188; Act 136 of 1898, § 15, subd. 26, p. 231; Town of Ruston v. Perkins, 114 La. 851, 38 South. 583; City of Lake Charles v. Roy, 115 La. 939, 40 South. 362; City of Lake Charles v. Marcantel, 125 La. 170, 51 South. 106.
The judgment appealed from is therefore affirmed.