Scheurer v. Banner Rubber Co., 28 L. R. A. (N. S.) page 1221, note.

[3] Defendant complains that the quantum of damages allowed by the verdict is excessive.

The jury seemingly allowed $2,500 for physical pain and suffering and mental pain and humiliation, and $5,000 (all that was claimed) for loss of earning capacity.

Plaintiff testified that he supposes he was laid up with his hand for eight weeks and suffered a good deal; and that the value of his pain and sufferings, he thought, was $2,000.

He further testified that he thought $1,000 was right for his mental pain and embarrassment, humiliation, etc.

On such vague and indefinite evidence we are of opinion that an award of $7,500 as damages is excessive, and should be reduced to $5,000.

It is therefore ordered that the verdict and judgment below be reduced to $5,000, and, as thus amended, be affirmed, and that the plaintiff pay the costs of appeal.

SOMMERVILLE, J., takes no part.

O'NIELL, J., dissents, being of the opinion that the accident was caused by the plaintiff's bearing down on the rear end of the board with his hand over the revolving knives, which was a negligent manner of operating the machine.

———

(74 South. 588)

No. 22030.

CITY OF BOGALUSA v. BLANCHARD.

(Feb. 12, 1917. Rehearing Denied March 12, 1917.)

*(Syllabus by the Court.)*

1. SUNDAY ⬅⟹2—REPEAL OF LAW BY LATER STATUTE — CLOSING OF MOVING PICTURE THEATERS.

Though the Act of 1886 (No. 18) known as the Sunday Law excepts theaters and places of

141 LA.—2

amusement from the requirement of closing on Sundays, the Act of 1898 (No. 136) providing for the creation and government of municipal corporations (as in part amended and re-enacted by Act No. 111 of 1912) confers upon the corporations so to be created the power to "regulate, suppress and impose a privilege tax on" such places, and, being a later expression of legislative will, controls in that respect the act of 1886, and authorizes such corporations to require theaters, including moving picture shows, to be closed on Sundays.

[Ed. Note.—For other cases, see Sunday, Cent. Dig. § 2.]

2. SUNDAY ⬅⟹2—CONSTRUCTION OF STATUTES —REGULATION OF THEATERS AND SHOWS.

The legislative charter of the city of Bogalusa (Act No. 14 of 1914) contains a grant to that city of all the powers conferred by the act of 1898 and other general statutes upon corporations created under the authority of those statutes, save as otherwise provided in said charter, and contains also a certain specific grant of authority "to regulate the police of theater, * * * balls, dance halls, concert saloons," etc., which grants are to be construed together, and, so construed, vest said city with the power to require that theaters and moving picture shows be closed on Sundays.

[Ed. Note.—For other cases, see Sunday, Cent. Dig. § 2.]

3. CONSTITUTIONAL LAW ⬅⟹240(1), 296(1)— DUE PROCESS OF LAW—EQUAL PROTECTION OF THE LAWS—CLOSING OF MOVING PICTURE SHOWS ON SUNDAY.

There is nothing in the legislation mentioned which contravenes the guaranties of due process of law and equal protection of the laws as contained in the federal and state Constitutions.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 688, 693, 697, 698, 825–829, 836, 838, 840–846.]

Land, J., dissenting.

Appeal from City Court of Bogalusa; C. Ellis Ott, Judge.

R. Blanchard was charged with the violation of an ordinance of the City of Bogalusa in conducting a moving picture theater on Sunday. Motion to quash the affidavit sustained, and the City appeals. Judgment annulled, and case remanded.

Bascom D. Talley, City Atty., of Bogalusa, for appellant. Benj. M. Miller, of Covington, and A. Sidney Burns, of Bogalusa, for appellee.

### Statement of the Case.

MONROE, C. J. Defendant, having been charged with the violation of a city ordinance by conducting a moving picture theater on Sunday, moved to quash the affidavit, on the grounds:

(1) That it charges no offense against the laws of the state or the ordinance invoked.

(2) That the ordinance is unreasonable, and is unconstitutional, in this:

(a) That the conducting of theaters and places of amusement on Sundays is authorized by Act 18 of 1886.

(b) That no authority is conferred on the city of Bogalusa by its charter to prohibit the conducting of such places upon that day.

(c) That the penalizing of the same deprives defendant of his property without due process of law and denies him the equal protection of the laws.

The trial court gave judgment "sustaining the motion to quash and declaring the ordinance * * * unconstitutional, null and void, in so far as it attempts to prohibit the operation of moving picture theaters on Sunday," and the city has appealed.

### Opinion.

Act No. 18 of 1886, known as the "Sunday Law," reads in part as follows:

"Section 1. * * * From and after the 31st day of December, A. D., 1886, all stores, shops, saloons, and all places of public business, which are or may be licensed * * * and all plantation stores, are hereby required to be closed at twelve o'clock on Saturday nights, and to remain closed continuously for twenty-four hours. * * *

"Sec. 2. * * * Provisions of this act shall not apply to news dealers, keepers of soda fountains, places of resort for recreation and health, watering places and public parks, nor prevent the sale of ice.

"Sec. 3. * * * That the provisions of this act shall not apply to newspaper offices, printing offices, book stores, drug stores, apothecary shops, undertaker shops, public and private markets, bakeries, dairies, livery stables, railroads, whether steam or horse, hotels, boarding houses, steamboats and other vessels, warehouses for receiving and forwarding freights, restaurants, telegraph offices and theaters, or any place of amusement, providing no intoxi-

cating liquors are sold in the premises: Provided, that stores may be opened for the purpose of selling anything necessary in sickness and for burial purposes."

And there are other provisos which need not be here considered.

In 1898 the General Assembly enacted a statute providing for the creation and government of municipal corporations throughout the state, etc., and conferred upon the corporations to be created under its authority the power:

"Sec. 15. * * * To enact ordinances for the purposes hereinafter named, and such as are not repugnant to the laws of the state. * * *

"Twenty-Fourth.—To regulate, suppress, and impose a privilege tax on all circuses, shows, theaters, billiard tables, bowling alleys, concerts, itinerant sellers of medicine, corn doctors, pet bear exhibitions, exhibitions for pay, fortune tellers, cane or knife racks, and like devices, gift enterprises, lung testers, museums, menageries, feather renovators, muscle testers or developers, peddlers, flying jennies, pistol or shooting galleries, theatrical exhibitions, ten pin alleys (without regard to the number of pins used) skating rinks, roller coasters and other like things. * * *

"Twenty-Sixth.—To prohibit and suppress tippling shops, saloons, dram shops, clubrooms; to restrain, prohibit, and suppress slaughter houses, houses of prostitution, disreputable houses, games, and gambling houses and rooms, dance houses and rooms, keno rooms, desecration of the Sabbath day and all kinds of indecency and other disorderly practices, disturbance of the peace, and to provide for the punishment of the persons engaged therein."

Act 136 of 1898, §§ 15, 24, 26, p. 231.

In 1912, by Act 111 of that year, the General Assembly amended and re-enacted section 15 of the act of 1898, but made no change in the paragraphs above quoted.

The city of Bogalusa was incorporated by Act 14 of 1914 (being a special act) which confers upon its "commission council" the following, with other, powers, to wit:

"Sec. 3. * * * All executive, legislative and administrative powers, duties and functions specified in this act, or now had, possessed and exercised by the municipal authorities and officers under the general municipal incorporation laws of the state, or under act No. 207 of * * * 1912, unless otherwise provided in this act. * * *

"Sec. 4. * * * (16) To regulate the police of theater, * * * balls, dance houses, con-

cert saloons, taverns, hotels and houses of public entertainment. * * * 25. To pass all ordinances within the powers granted in this charter and to enforce the same by fine not to exceed $100 or imprisonment not exceeding 30 days, or both."

[1] It will be seen from the foregoing that the "Sunday Law" of 1886 requires the closing of "all stores, shops, saloons and all places of public business, which are or may be, licensed," but that it expressly excepts "theaters, or any place of amusement" from that requirement; that the general incorporation act of 1898 confers upon the corporations created under its authority the power "to regulate, suppress, and impose a privilege tax on all circuses, shows, theaters, billiard tables, * * * exhibitions for pay, * * * gift enterprises, * * * theatrical exhibitions * * * and other like things; * * * to prohibit and suppress tippling shops, saloons, dram shops, clubrooms; to restrain, prohibit, and suppress slaughterhouses, houses of prostitution, disreputable houses, * * * gambling houses and rooms, dance houses and rooms, * * * desecration of the Sabbath day and all kinds of indecency," etc.; that the grant so made in 1898 is reaffirmed by Act 111 of 1912; and that the legislative charter conferred on the city of Bogalusa in 1914 in express terms grants to that corporation all the powers which had thus been conferred upon the corporations created under the authority of the general laws, "unless otherwise provided" in said charter, and (by special provision) the power "to regulate the police of theaters, * * * balls, dance houses, concert saloons, taverns, hotels and houses of public entertainment."

Pretermitting the question of constitutionality, it is clear that the act of 1898 is as much the law as the act of 1886, and somewhat more so, since it is a later expression of legislative will, and that the act of 1914 is as much and more the law as and than the other two, and equally clear that, if it was competent for the General Assembly in 1886 to require ordinary places of business to be closed on Sunday and to except theaters from that requirement it was also competent for it in 1898 and 1912 to withdraw that exception by authorizing the various municipal corporations to require theaters, as well as ordinary places of business, to be so closed, and in 1914 by conferring that authority on the city of Bogalusa. It will be observed that in one paragraph, the acts of 1898 and 1912 confer the power to "regulate, suppress and impose a privilege tax on," and in another the power to "prohibit and suppress," and to "restrain, prohibit and suppress," and that, after conferring those powers on the city of Bogalusa by section 3 of its charter, it proceeds in section 4 to confer the power "to regulate the police of theater * * * balls, dance houses, concert saloons, taverns, hotels and houses of public entertainment"; and the question naturally suggests itself, whether by these varying forms of expression it was intended to withdraw or nullify the grant of authority to "suppress" which is contained in all of them. Having considered that question, our conclusion is that it should be answered in the negative. The power to "regulate, suppress and impose a privilege tax on" cannot be exercised at one and the same time, since a "circus, * * * exhibition for pay, * * * fortune teller," etc., cannot, if suppressed, be either taxed or regulated, and we conclude that it is the intention of the law to confer the power to regulate, to suppress, to impose the privilege tax on, and to leave it to the municipal authorities to adopt either of those measures, or combine them so far as they may be combined and as the circumstances of the particular case may require.

The power is conferred to "prohibit and suppress tippling shops, saloons, clubrooms,"

etc., and to "restrain, prohibit and suppress" houses of prostitution, desecration of the Sabbath day and all kinds of indecency, and other disorderly practices, disturbance of the peace," from which it is evident that the word "restrain" was used, not with the intention of withdrawing the power to "prohibit and suppress," but merely to afford an alternative. And the same thing may be said of the grant of power "to regulate the police of theater, * * * balls, dance houses, concert saloons," etc., as construed with that to "regulate, suppress and impose a privilege tax on," to prohibit and suppress, "to restrain, prohibit and suppress."

We are not here concerned, however, with the question of the possession vel non by the city of Bogalusa of the power wholly to suppress a theater or other business, and it is unnecessary that we should determine that question it being sufficient for the purposes of this case that we find that the General Assembly in its latest enactment on the subject has assumed to confer upon that city the power to regulate and suppress theaters, theatrical exhibitions, exhibitions for pay, etc., and that, even though the power to suppress, as thus conferred, should be regarded as subject to limitations, that power, together with the power to regulate, is sufficient authority for an ordinance requiring theaters to be closed on Sundays.

[2, 3] It has been held by this court that the Sunday law here in question (meaning the act of 1886) does not contravene the constitutional provisions which guarantees due process of law and equal protection of the laws. State ex rel. Walker & Mertz v. Judge, 39 La. Ann. 132, 1 South. 437. And similar statutes have been enacted and sustained in practically all of the other states. 8 Cyc. 885. If, then, a law which requires the closing of ordinary business establishments on Sundays, and excepts theaters from that requirement, is constitutional, equally so is a law which does not contain that exception; and, if it is competent for the General Assembly to require theaters to close on Sundays, it is equally competent for it to confer that power upon the political corporations within the limits of which the theaters are conducted, since the operation of a theater is more especially a matter of local concern, and it is for the regulation and control of such matters that political corporations are established and vested with governmental authority.

"Theatrical entertainments and performances on Sunday (say many of the authorities) cause agitation and disturbance, contrary to law, and are generally expressly prohibited by statute or ordinance. The statutes and ordinances have been held to forbid all performances in theaters or other places of public amusement and entertainment on Sunday, and to cover moving picture shows or exhibitions." 37 Cyc. 551, citing authorities.

See, also, State v. Garibaldi, 44 La. Ann. 809, 11 South. 36; City of New Orleans v. Collins, 52 La. Ann. 973, 27 South. 532; Town of Eros v. Powell, 137 La. 350, 68 South. 632; No. O. Waterworks Co. v. City of N. O., 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518; Walla Walla v. Walla Walla Water Co., 172 U. S. 1–9, 19 Sup. Ct. 77, 43 L. Ed. 345; McQuillin's Mun. Corp. vol. 3, § 973, p. 2127; 8 Cyc. 885.

The ordinance here in question follows pretty closely the Sunday law, and includes among the exceptions to its requirements "places of resort for recreation and health," but excludes from such exceptions "theaters, or any place of amusement"; and our learned brother of the city court, after citing certain authorities, says in his well-considered opinion:

"If we are to follow these cases, it would seem that this charge does not set out a violation of Ordinance No. 37 of the city, as the operation of defendant's moving picture show would come within the exception in section 2 under the exception of 'places of resort for recreation and health.'"

It is, however, quite evident, as we think, that the framers of the ordinance considered,

as did the framers of the Sunday law, that a place of resort for recreation and health is a place which may subserve one purpose—i. e., recreation, and health—without prejudice to good order and morals, whilst a theater is intended rather to amuse, but may be prejudicial in other respects, and we concur in that view.

For the reasons thus assigned, we conclude that there was error in the judgment appealed from, and it is therefore ordered that the same be annulled, and that this case be remanded, to be proceeded with according to law and to the view hereinabove expressed.

LAND, J., dissents for reasons assigned. See 74 South. 590. SOMMERVILLE, J., takes no part.