478 So.2d 608 (1985)
Arwood L. FINLEY, et ux, Appellee,
v.
Pearl BASS, Franklin Parish School Board and Shelter Insurance Companies, Appellant.
No. 17289-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1985.
*610 Dimos, Brown, Erskine, Burkett & Smith by David G. Erskine, Monroe, for appellee.
Hudson, Potts & Bernstein by Gordon L. James, Monroe, for Pearl Bass and Shelter Ins. Co.
John B. Knight, Jr., Winnsboro, for Franklin Parish School.
Before JASPER E. JONES, SEXTON and NORRIS, JJ.
NORRIS, Judge.
This is a suit for personal injuries and other related damages arising from a collision between a car and a school bus. The plaintiff, Arwood L. Finley, prevailed at trial, receiving $60,000 for pain and suffering, $178,000 for lost wages and lost earning capacity, and about $12,000 for medicals. His wife, Mrs. Finley, also received $5,000 for loss of consortium. The defendants were Pearl Bass, the driver of the school bus, Shelter Insurance Company, his personal insurer, and the Franklin Parish School Board, his employer. The School Board filed an incidental demand for indemnification against Mr. Bass and Shelter. The trial court granted this. All defendants appealed, asserting that the damages were excessive. Bass and Shelter also appealed, claiming that the School Board cannot receive indemnification from them. The Finleys answered the appeal, urging that the loss of consortium damages were inadequate. For the reasons expressed, we affirm.

FACTS
This accident occurred in the town of Wisner shortly before 8:00 a.m. on January 20, 1983. The sky was overcast and light rain was falling. Mr. Finley was driving south on La. Hwy. 15 in his 1970 Maverick. The school bus, driven by Mr. Bass and loaded with children, was going north. They came to Watson Street, which squarely intersects with Hwy. 15; Mr. Bass intended to make a left turn there. He waited for a few cars to pass straight through the intersection and then began to negotiate his turn. He suddenly realized that there was another car, driven by Mr. Finley, coming straight in his direction, but it was too late to avoid a collision. The point of impact was about two feet over the center line, in Mr. Finley's lane.
At trial, Mr. Bass insisted that Mr. Finley was driving without his headlights on; Mr. Finley maintained the opposite. The trial court, however, took judicial notice that the sun rose at 7:09 a.m. that morning; there was therefore enough daylight by 7:45 for Mr. Bass to have seen the oncoming car regardless of whether its lights were on. The defendants also urged at trial that there was a clear parking lot on one corner of the intersection and that Mr. Finley could have made a quick right turn into the lot, thereby avoiding the collision. The trial court viewed the situation as a sudden emergency. Things happened too quickly for Mr. Finley to react. Finally, the defendants claimed that Mr. Finley not only failed to avert the accident, but actually caused it by releasing his steering wheel and lying down on his front seat just before impact. The trial court found that under the exigency of the situation, Mr. Finley could not have caused the accident, even if he let go of the steering wheel.
The accident left Mr. Finley unconscious for about five minutes. When he came to, he crawled with difficulty from beneath the dashboard. Both knees were lacerated; his arm was injured; he had numerous cuts and bruises all over. He was taken to Winnsboro Hospital, where he stayed for one day, and then he transferred to Citizens Hospital in Columbia, where he spent four days. When he left, he was still suffering pain in his neck, arm, back, legs, and genital area.
In the months following the accident, he saw a large number of doctors. Dr. Smith, an orthopedic surgeon in Baton Rouge, diagnosed *611 cervical sprain, lumbosacral sprain, lacerations of both knees, and a contusion of the right hand. An arthroscopic test of the left knee revealed five serious problems which he felt could be corrected by surgery.[1] The surgery was an apparent success, but the knee pain remained "significant" for several months, and has never completely abated. Mr. Finley had, however, a history of prior knee problems. He had stepped in a hole in 1980, twisting his right knee; he sustained another injury to the right knee in 1982, and this one required surgery. After the auto accident and the 1983 surgery, Mr. Finley underwent yet another surgery in January 1984. As of October 1984, he still complained of pain in both knees.
Dr. Smith also diagnosed a minor hand injury. This injury had cleared up by March 1983. As with the right knee, Mr. Finley had suffered a prior injury to his hand in December 1982, but Dr. Smith felt that this was completely healed by the time of the auto accident.
Mr. Finley's biggest problem was, and still is, back and neck pain. The lower back pain radiates into his legs and is aggravated by simple acts like coughing and sneezing; stooping and lifting are out of the question for him. Shortly after the accident, he saw Dr. Nawas, who diagnosed a musculoligamentous strain to the neck and lower back but found no evidence of nerve root irritation, disc herniation, ruptures or bony injuries. Dr. Smith also examined his back. He ran an X-ray that was negative, but testified by deposition that only a myelogram would reveal the extent of the injury; to his knowledge, no one had performed a myelogram.[2] Nevertheless, his objective findings substantiated Mr. Finley's complaints of pain. Surgery on his back, however, was not advisable, because of Mr. Finley's very extensive history of back problems, especially three prior surgeries. Mr. Finley has a very large amount of scar tissue in his back and the risks of additional surgery would be too great. All the experts agreed that Mr. Finley had pre-existing back problems; they also agreed that in his current state, he cannot engage in physical work. Furthermore, there is little or no prospect of improvement. Mr. Finley is a fifty-five year old man who has worked as a boilermaker for most of his life. Because boilermaking involves heavy physical labor, Mr. Finley can no longer pursue it; he has likewise had to give up most of the activities he usually performed at his home, including light farming.

ASSIGNMENT NO. 1
Appellants claim the trial court erred in finding Mr. Bass 100% at fault and absolving Mr. Finley of all fault. They concede that Mr. Bass was guilty of some fault. A motorist making a left turn has a duty to yield to oncoming traffic. LSA-R.S. 32:122; Gibson v. Fisher, 401 So.2d 565 (La.App.3d Cir.1981). Appellants contend, however, that Mr. Finley committed some fault and that his damages should be reduced accordingly. LSA-C.C. art. 2323.
The alleged acts of negligence are the same as those argued at trial and rejected by the trial court. They include the failure to turn on his headlights, the failure to make an evasive turn into a place of safety, and the failure to maintain control of his car.
As for the first alleged act of negligence, the trial court did not specifically hold that Mr. Finley's lights were on. It rather held that Mr. Bass should have seen him regardless, and we agree. In addition to the meteorological evidence of which the trial court took judicial notice, we also feel that a bus driver has a high and clear vantage point. From his position, he *612 should have seen Mr. Finley. As for the possible evasive tactics, the law is well settled that a person in imminent peril is not bound to take clever, evasive action unless he caused the situation. Hickman v. So. Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972). Since we find from the other evidence that Mr. Finley did not contribute to the dangerous situation, he will not be faulted for failing to take actions that might seem better after calm, rational reflection. The same reasoning applies to the third alleged act of negligence. Mr. Finley resolutely denies releasing the wheel; the only evidence to the contrary is Mr. Bass's own testimony, which seems unreliable not only because of its self-serving nature, but because Mr. Bass's attention was presumably focused on the safety of the school children and on avoiding the impending accident. It is quite strange that Mr. Bass, who claims he was unable to see the car coming, nevertheless was able to register all of Mr. Finley's gesticulations before the impact.
In a tort action where the only real issue is reasonableness of conduct, the determination and apportionment of fault are factual matters. Towns v. Georgia Cas. & Sur. Co., 459 So.2d 124 (La.App.2d Cir.1984); Varnado v. Continental Ins. Co., 446 So.2d 1343 (La.App.1st Cir.1984). Appellate courts will not disturb these findings unless they are manifestly erroneous. Towns, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Our review of the evidence shows sufficient, credible testimony from which to hold Mr. Finley free of fault. We therefore affirm this aspect of the trial court's judgment.

ASSIGNMENTS NOS. 2 & 3
In these assignments, appellants contend that Mr. Finley's awards for personal injuries and lost wages are excessive. The common factor that underlies both arguments is the emphasis on Mr. Finley's very extensive history of illness and pain. Even without the accident, appellants urge, Mr. Finley would have suffered so much pain that he could not have worked for the next ten years, and thus the lost earnings award was excessive; even with the accident, they claim, his pain and discomfort is only marginally worse than it was before, and so the general damages are likewise excessive.
The experts agreed that Mr. Finley had many pre-existing problems. See Dr. Hand's Dep., p. 9; Dr. Smith's Dep., pp. 36-38. He underwent a laminectomy and a fusion in 1963 or 1964; he had another fusion surgery sometime later. The back problems that these operations tried to correct kept him out of work for ten years between 1963 and 1973. In 1980 he underwent a major coronary bypass surgery which laid him up for several months. He had two accidents that injured his knees in the early 1980s, and a fractured bone in his hand in December 1982. In essence, appellants portray Mr. Finley as a man in his mid-fifties, enfeebled by injuries, and unlikely to work until retirement.
There was, however, much evidence to suggest that Mr. Finley was a determined worker who, for several years before the accident, had refused to give in to pain. One of his co-workers at the Exxon refinery in Baton Rouge, a Mr. Gaudet, testified that he was a "top hand" and an extremely good worker up until just before the accident. R.p. 78. Another co-worker, a Mr. Spagle, confirmed that Mr. Finley was excellent at heavy work. R.p. 83. There is also the deposition of Mr. Sharpe, who was eager to secure Mr. Finley's services in a heat exchanger repair company that he was planning to form. Sharpe's Dep., p. 13. We find this evidence very impressive, despite the fact that Mr. Sharpe's proposed business venture never jelled. In addition to all this testimony, there is Mr. Finley's assertion that he would work but for the pain. R.p.p. 62-63. From all the evidence, the trial court was certainly entitled to conclude that Mr. Finley was the victim of a serious aggravation of pre-existing injuries that left him unable to continue his trade as a boilermaker. Furthermore, the trial court was not clearly wrong in concluding that except for the aggravating *613 effects of this accident, Mr. Finley, with his moderate health and excellent work attitude, would have worked until retirement.
Moreover, the financial evidence fully supports the award. The exhibits contain Mr. Finley's income tax returns for the years 1980, 1981 and 1982, which show gross incomes from his trade as a boilermaker of about $25,000, $34,000 and $22,000 respectively. Thus the trial court's award of $178,000, which averages out to $17,800 per year, is not immoderate; if anything, it is on the low side. Lost wages need not be proven with precision; reasonable certainty is the standard. Holman v. Reliance Ins. Co., 414 So.2d 1298 (La. App.2d Cir.1982), writ denied 420 So.2d 164 (La.1982); Heard v. Sanders, 223 So.2d 212 (La.App.2d Cir.1969). Given the fluctuating labor market and Mr. Finley's periodic absences from work, we think the award of about $17,800 a year is entirely reasonable. This calculation does not even take into account Mr. Finley's lost earning capacity. See Folse v. Fakouri, 371 So.2d 1120 (La. 1979). Given this factor, which would tend to increase Mr. Finley's damages, we cannot conclude that the award for lost earnings was excessive.
Turning to the issue of general damages, we first state our guidelines on review. A factual finding of pain and suffering is entitled to much deference and will be reversed only on a showing of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, supra. The assessment of monetary damages is discretionary with the trial court and a judgment cannot be reversed absent a showing of abuse of discretion. LSA-C.C. art. 1999; Arceneaux v. Domingue, supra.
Pain is a subjective phenomenon that is only fully appreciated by the sufferer. In the instant case, we were privileged with descriptions by Mr. Finley of the pain he suffers. This includes pain and soreness both in the neck and lower back. The lower back pain radiates into his legs. There is also the unresolved pain in the testicles. The left knee is still a serious problem. Mrs. Finley corroborated these complaints and mentioned the numerous household activities that Mr. Finley can no longer perform. Finally there is the expert testimony that is lengthy and supports the testimony. There is no evidence to deny that Mr. Finley lives in very great pain. Thus we cannot conclude that the trial court committed manifest error in awarding Mr. Finley for his pain and suffering.
Appellants next argue that Mr. Finley was already suffering very great pain before the accident. The law is well settled that a tortfeasor takes his victim as he finds him and is responsible for all the natural and probable consequences of his conduct. Sepulvado v. Willis-Knighton Med. Center, 459 So.2d 152 (La.App.2d Cir. 1984), writ denied 462 So.2d 197 (La.1984); Sansonni v. Jefferson Par. Sch. Bd., 344 So.2d 42 (La.App.4th Cir.1977), writ denied 346 So.2d 209 (La.1977). Despite appellants' imputation of pain to Mr. Finley before this accident, the evidence overwhelmingly shows that he was working and functioning normally before the accident, even if he was in some pain. Now he cannot work or do his household chores; something as simple as turning over in bed causes him great pain. The award of $60,000 does not appear to be an abuse of discretion for a plaintiff who, by the trial court's findings, is now severely disabled and has so many places of injury.
Both sides have cited us to other quantum cases for purposes of comparison under Reck v. Stevens, 373 So.2d 498 (La. 1979). Reck permits us to refer to a scale of prior awards only if the instant award is an abuse of discretion and the prior injuries are truly similar. Since we have found no abuse of discretion, we will not discuss the cases cited. We have studied them, however, and note that none of them presents the wide array of injuries that Mr. Finley has suffered. Accordingly, we affirm the trial court awards for pain and suffering and lost wages.

*614 ASSIGNMENT NO. 4
In this assignment, appellants claim the trial court erred in awarding damages to Mrs. Finley for loss of consortium; the Finleys answered, seeking an increase in this award from $5,000 to $30,000. The thrust of appellants' argument is that the Finleys failed to present any evidence of the value of the services allegedly lost. The entitlement to these damages is accorded by statute. LSA-C.C. art. 2315 B provides:
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
This paragraph, added by Acts of 1982, No. 202, creates, defines and regulates a cause of action for certain relations of a tort victim who does not die from his injuries. Ferguson v. Burkett, 454 So.2d 413 (La.App.3d Cir.1984). Because of the recentness of this amendment, there is no jurisprudential guidance for the assessment of damages. We have no difficulty, however, dismissing appellants' argument that the Finleys proved no damages. It is quite plain from the circumstances that Mrs. Finley has suffered and is entitled to an award under the provisions of the statute.
Because of the dearth of jurisprudence, it is more difficult to analyze the Finleys' contention that the damages are insufficient. They urge that we break down the concept of "consortium" into seven component parts. We have done so, for lack of any other approach, and find that even under this analysis the damages do not appear to be abusively low.
The first element of loss is love and affection. There is no allegation that Mrs. Finley stopped loving her husband as a result of the accident. We can appreciate that the events surrounding the accident may have placed some strain on their relationship. Second is society and companionship. There is no doubt that Mrs. Finley misses her husband when he must retire early due to pain and discomfort. On the other hand, Mr. Finley will spend much more time at home with her now that ambulation is a problem for him. This will provide them with more togetherness than they used to enjoy when Mr. Finley was away in Baton Rouge at the Exxon Plant. Third is sexual relations. Mrs. Finley testified that the frequency had decreased by seventy percent; this is undisputed. The loss should be considered against the age and general health of Mr. Finley. Fourth is the right of performance of material services. Mrs. Finley testified that she and her son must now perform numerous household and farming chores that Mr. Finley used to do. She did not testify, however, that she would not have engaged in these tasks but for the accident, nor did she allege that she was forced to hire extra help, thereby incurring a financial loss. Since material services are susceptible to reasonably certain proof, some evidence should have been offered. Cf. Edwards v. Lewis Grocer Co., 391 So.2d 13 (La.App.2d Cir.1980). Fifth is the right of support from her husband. We construe this to mean financial support. The trial court awarded Mr. Finley $178,000 to compensate him for lost wages and earning potential. This is equivalent to the salary or commissions he would have taken home to support himself and his wife, so the loss here is not great. Sixth is aid and assistance, which Mrs. Finley has not sufficiently distinguished from "material services." The quantum of this loss was not proved. Finally is the loss of felicity. Mrs. Finley has not elaborated on this element of damages. We think that every personal injury tends to decrease the parties' overall happiness but Mrs. Finley has not shown any particular losses distinct from the other elements enumerated. In sum, Mrs. Finley has proved a definite loss on only one element, sexual relations, and a potential loss of material services.
The trial court has great discretion to assess damages that cannot be calculated with certainty. LSA-C.C. arts. 1999, 2324.1. His formulation of damages is enhanced *615 by his personal observation of the parties' demeanor. We will not adjust the award unless there is an obvious abuse of discretion. Mrs. Finley's award of $5,000 is probably on the lower end of the discretionary scale, but it is not abusively low in light of the elements we have outlined. The part of the judgment awarding damages for lost consortium is affirmed.

THE INCIDENTAL ACTION
The School Board brought an incidental action against Mr. Bass and his insurer for indemnity of any damages the Board may be compelled to pay. LSA-C.C.P. arts. 1071, 1111. The trial court rendered judgment on the third-party claim as requested, limiting the recovery against Shelter to its contractual maximum of $15,000. On appeal, Mr. Bass claims that there is no right of indemnity by an employer against his tortfeasing employee under the provisions of LSA-R.S. 9:3921. He further claims that to impose indemnity in this case would be inequitable. We have carefully studied his argument and are unable to find any basis for denying indemnity; accordingly, we are constrained to affirm the judgment.
The question of indemnity is only part of the larger problem of characterizing the relations between debtors. Mr. Bass has asked us to analyze this problem as it pertains to the issue on appeal. The employment relation imposes on the employer a financial responsibility for the damages caused by his employee in the course and scope of his duties. LSA-C.C. art. 2320. Except in rare cases where the employer is also guilty of fault in causing an accident, the employer's liability is only vicarious. But regardless of the theoretical basis for holding the employer liable, the effect of article 2320 is to make both the employer and the employee liable for the plaintiff's damages. Whenever each obligor is liable for the same performance, the obligors are solidary. LSA-C.C. art. 1794. This is so in the case of employer and employee even though article 2320 does not specifically bind the parties solidarily and even though solidarity cannot be presumed. LSA-C.C. art. 1796; Foster v. Hampton, 381 So.2d 789 (La.1980).
For almost a century, the jurisprudence had treated the employer's liability in an article 2320 situation as imperfect or in solidum. Gay v. Blanchard, 32 La.Ann. 497 (1880).[3] Imperfect solidarity carried with it the principal effect, or necessary attribute of solidarity, namely the dual obligation to render the same performance, but it lacked the secondary effects, such as a right of contribution among co-debtors. See A. Levasseur, Precis in Conventional Obligations: A Civil Code Analysis, 18. Of course, if the employer was made to pay the entire debt, he could seek indemnity from the employee. Brannan, Patterson & Holliday v. Hoel, 15 La.Ann. 308 (1860). But if the employee was made to pay the entire debt, he could not call on his employer for contribution. This was because their liabilities were based on different theories, and the employer was a kind of surety. A necessary corollary of this system was that if the injured party conventionally released the employee, he automatically and irrevocably released the employer, despite any attempt to reserve his rights against the latter. Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960).
The notion of imperfect solidarity, however, was not grounded in the Civil Code; accordingly, the supreme court simplified the law by holding the employer and employee to be solidary obligors, in solido. Foster v. Hampton, supra. This eliminated the theory of imperfect solidarity and set the stage to eliminate the corollary of the conventional release. The court did so the following term in Sampay v. Morton Salt Co., 395 So.2d 326 (La.1981), holding that the general rules of solidarity apply to an employee's tort; if the plaintiff settles with the employee, he may successfully *616 assert the remainder of his claim against the employer.[4]
This judicial resolution still left unresolved the question of indemnity by the employer against the employee. Under the old scheme, a subsequent claim by the injured party against the employer was barred, so the employer's incidental action against his employee was not possible. Williams v. Marionneaux, supra. Under the new scheme, the result was unclear, because the civil code permitted reservation of rights against a debtor in solido. LSA-C.C. art. 2203 (1870) (now repealed; cf. new LSA-C.C. art. 1803).
The legislature addressed this question by enacting in 1982 LSA-R.S. 9:3921, which provides, as amended:[5]
A. Notwithstanding any provision in Title III of Code Book III of Title 9 of the Louisiana Revised Statutes of 1950 to the contrary, every master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed. Any remission, transaction, compromise, or other conventional discharge in favor of the employee for such damage shall be valid as between the damaged creditor and the employee and the employer shall have no right of contribution, division, or indemnification from the employee nor shall the employer be allowed to bring any incidental action under the provisions of Chapter 6 of Title I of Book II of the Louisiana Code of Civil Procedure against such employee.
B. The provisions of this Section are remedial and shall be applied retrospectively and prospectively to any cause of action for damages arising prior to, on, or after the effective date of this Section.
This section prohibits the employer's incidental action against the employee who has settled with the plaintiff. By its express terms, the section cannot be applied to the instant case because there was no conventional release. Rather, the tortfeasing employee was taken to trial and judgment was obtained against him. The plain wording of the statute excludes Mr. Bass from its protection. The history of the jurisprudence fortifies the conclusion that the statute was intended to be confined only to cases of conventional release.
We are not insensitive to the policy arguments raised by Mr. Bass. An indemnity action subverts the notion that the employer, who reaps the ultimate gain from the toil of his employee, should bear the ultimate cost of the enterprise. Actions by a well-heeled employer against an impecunious employee are unfair and hurt worker morale. Most of all, they upset the modern system of risk distribution. See Comment, Employer's Indemnity Action, 34 La.L.Rev. 79, 85 (1973). The effect is particularly unfair in the instant case, where the employer failed to carry liability insurance on its driver.
Despite Mr. Bass's appeal to equity, we are bound by the plain reading of the statute, which does not give him the protection he seeks. The result is fortified by the jurisprudential history. We are not permitted to disregard the letter of the law in pursuit of its spirit. LSA-C.C. art. 13. The civil code also contemplates an action for indemnity against the employee. LSA-C.C. art. 1804, paragraph 3. The jurisprudential authority for the indemnity action is longstanding. Brannan, Patterson & Holliday v. Hoel, supra. Finally, despite the meritorious policy considerations in favor of the employee, Mr. Bass was guilty of personal negligence, and as such is liable for the damages occasioned by his act. LSA-C.C. art. 2315. Therefore we must affirm this part of the judgment.
For the reasons expressed, the judgment is affirmed.
AFFIRMED.
NOTES
[1] Dr. Smith identified the problems as:

(1) Fibrotic and torn medial shelf
(2) Grade One chondromalacia of the patella
(3) Longitudinal posterial horn tear of the medial meniscus
(4) Grade Three chondromalacia of the medial femoral condyle
(5) Medial joint compartment synovitis
[2] Mr. Finley testified that Dr. Llewellyn performed a myelogram. R.p. 61-62.
[3] 2 M. Planiol, Civil Law Treatise pt. 1, nos. 777-779, at 416-17 (11th ed. La.St.L.Inst.Trans. 1959); Comment, Tilting Against Windmills: A Solidary Rejoinder, 41 La.L.Rev. 1279, 1283 (1981).
[4] Sampay overruled Williams, 395 So.2d at 329.
[5] Amended by LSA-Acts 1984, No. 331, § 10.