BARRY, Judge.
Stanley Breaux’s automobile was rear-ended by a Canteen Corporation truck on January 22, 1980. The defendant truck driver, Canteen, and its insurer, Continental Casualty Company only appeal the lump sum award of $155,000.00 for pain and suffering and lost wages.
Breaux’s father testified that prior to the accident his son worked for many years as a truck driver, mechanic, maintenance man and business hustler for his small company which was a supplier of sand and gravel. Breaux’s duties included making several trips daily to Pearl River for sand and gravel, overseeing the other drivers, and maintaining the trucks. His hobbies included hunting and big game fishing. Mr. Breaux said business decreased between 1980 and 1985.
Breaux testified that the day after the accident he experienced lower back pain and could not get out of bed. He saw the family doctor, Dr. Joseph Persich, as soon as possible on January 29, 1980. Dr. Per-sich testified that he found straight leg raising positive on the left side, noted the possibility of disc involvement, and prescribed a muscle relaxant and therapy. After four treatments and little relief Dr. Persich recommended a lumbar corset, but told Breaux he could return to light duty March 3rd.
When Breaux saw Dr. Persich on April 14th the pain over the left lateral lumbar spine area radiated into the left leg down to the knee and he was unable to bend or stoop. On April 21st, after three unsuccessful ultrasound treatments, the pain had intensified and shifted to the right side. Dr. Persich injected a steroid into the right sacroiliac only to relieve the symptoms but not to help the condition. Soon after the pain diminished and the doctor told Breaux to work full-time.
By October 13, 1980 the pain returned and on November 17th Dr. Persich again injected a steroid. Temporary improvement came within days and lasted until May, 1981. The pain recurred and there was paresthesia over both thighs. Dr. Per-sich ordered a CAT scan, but the report was lost. By June, 1981 he prescribed an analgesic. At that point in Dr. Persich’s notations there was a one year gap until June 28, 1982.
Breaux said Dr. Persich referred him to Dr. Eugene Dabezies who ran a myelogram in July, 1981 and called in Dr. Andrew King, orthopedist. Dr. King testified that Breaux had a marked disc space narrowing at L5-S1 level and marked degenerative changes throughout the cervical and thoracic spine. He prescribed Naprosyn and a lumbosacral corset, but did not consider Breaux a surgical candidate. Breaux testified that sometime in 1981 or 1982 he saw Dr. Laxmer Kewalramani who relieved his pain for several months with the use of relaxants and pain medication, but was sent back to his other doctors. No testimony from this doctor is in the record although a bill was presented.
In his June 15, 1982 notation Dr. King stated Breaux was unable to work and Dr. Persich agreed. About that time Dr. Per-sich also found cervical spine or disc problems referable to the accident. X-rays indicated degenerative spurs and moderate en *560 croachment at C6-C7 which could indicate nerve root pressure.
By January, 1984 Breaux had been advised to use neck traction and moist heat. June, 1984 x-rays confirmed severe degenerative changes with narrowing of L5-S1 disc and also indicated hypertrophic spurring at L4-5 disc. In April, 1985 Breaux was still complaining of low back pain, pain in the left leg and neck and shoulder.
Dr. King saw Breaux five times and said he had a condition tending to cause degenerative changes in the spine at an early age (DISH — degenerative lumbar disc disease) which became symptomatic with the accident. He opined that Breaux was 100 percent disabled as a truck driver and had a 15 percent loss of function to the whole body with little hope of improvement. If his condition worsened he might need a decompression operation. Dr. King said Breaux was unable to stand, sit or walk for more than an hour, to lift more than 10-15 pounds, and to bend over repeatedly. The doctor felt that prolonged traveling in a car exacerbated the pain and would affect Breaux’s ability to carry out most gainful employment. Dr. King expected little improvement in the ensuing years.
Dr. Persich testified that he “went along” with Dr. King’s view because Breaux had an ongoing problem which required use of a cane. Dr. Persich opined that the back pain and cervical problems were related to the automobile accident.
Dr. Raymond Haddad, defense orthopedist, saw Breaux once on February 13, 1981. X-rays indicated a marked narrowing of the lumbosacral joint. Dr. Haddad testified Breaux had degenerative lumbar disc disease with sciatica in the left lower extremity which pre-dated the accident and said a cervical spine injury would have evidenced itself at the time of the accident. He said driving a large truck and prolonged sitting would constantly aggravate such a condition. Dr. Haddad opined that disc narrowing is usually caused by repeated trauma (such as riding in a truck) rather than one trauma from an automobile collision.
In order to buttress their position that Breaux had a disc disease long before the accident, the defendants point to prior episodes of back problems. Dr. Persich testified to an associate’s 1963 file notation that Breaux had a low back syndrome. However, that was an isolated complaint (alleviated by one prescription of a muscle relaxant) almost 20 years before the accident. Dr. Persich also said 1976 x-rays of Breaux’s spine were essentially negative. Breaux explained the x-rays were made when he complained of back pain because of overweight. However, he lost 65 pounds and the pain disappeared.
The trial court noted the somewhat conflicting medical testimony, but felt that Breaux has a severe degenerative disc disease caused to some degree by the accident. The trial judge felt there was a pre-existing condition which was aggravated and militates against his continuing as a truck driver. This was a fact call which we find is supported by the record. A negligent defendant must compensate his victim to the full extent of his aggravation of a pre-existing injury. Perniciaro v. Brinch, 384 So.2d 392 (La.1980).
Breaux’s gross income from tax returns show: 1979 — $18,516.13; 1980 — $14,300; 1981 — $1,445.00 in unemployment compensation; 1982 — $4,403.42; 1983 — $4,301.60; 1984 — none; 1985 — none. He stayed on his father’s payroll until July, 1980 and worked temporary supervisor jobs in 1982 and 1983. He claimed constant pain, severe at times, wore a corset continually, could not sit comfortably for any length of time, and could ride in a car for 30 minutes maximum.
Breaux, thirty-nine years old at the time of the accident, has a high school education and no special training. He did not attempt to work in 1984 or 1985 although no doctor told him not to do so. In his reasons the trial judge correctly noted that Breaux had other possible employment from which he could earn above minimum wage.
Dr. Melville Wolson, an expert in forensic economics, estimated Breaux’s lost *561 wages from January, 1980 to May 16, 1985 to be $85,311.00 (after taxes). He testified the differential loss of earning capacity if Breaux could not return to gainful employment would be $227,876.00 (discounted at 7V2%) and $172,465.00 (discounted at 11.1%).
The trial court has much discretion in making damage awards. An appellate court must not disturb the assessment of damages unless there is clear abuse of discretion. La.C.C. Art. 1934(3) (pre-1985). Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Ferguson v. State Farm Insurance and Casualty Company, 398 So.2d 72 (La.App. 4th Cir.1981). The trial court has closer contact with the injured party and is better able to decide the actual loss. Profit v. Linn, 346 So.2d 253 (La.App. 1st Cir.1977); Canter v. Koehring, 283 So.2d 716 (La.1973).
Pain and suffering cannot be calculated with mathematical precision. Walton v. Williams Wolf Baking Company, 406 So.2d 168 (La.1981), quoting Boutte v. Hargrove, 290 So.2d 319, 322 (La.1974).
We conclude the trial court did not abuse its discretion in granting the $155,-000.00 lump sum award. The judgment is affirmed.
AFFIRMED.