WILLIAM A. CULPEPPER, Judge Pro Tem.
This matter is again on appeal to us after we remanded the case to the trial court for consideration of the impact of LSA-R.S. 9:3921 on the subrogation claim of Travelers Insurance Company (Travelers) against Cyrus Roy (Roy), an employee of Travelers’ insured. See our earlier opinion Comeaux v. Roy, 469 So.2d 478 (La.App. 3 Cir.1985), for the facts and our earlier disposition of the case. On remand the trial court ruled that R.S. 9:3921: (1) could be applied retroactively; and (2) was constitutional as applied to the present case. Travelers appeals, contending the retroactive application of the statute violates the constitutional prohibition against impairment of contracts. LSA-La. Const.1974, art. I § 23; U.S.C.A. Const., art. I, § 10; LSA-C.C. art. 8.
The pertinent facts here are that the minor child of the plaintiff, Maryleen Co-meaux, was riding on a motorcycle which was struck by a vehicle driven by Cyrus Roy, an employee of Morgan Goudeau & Associates, Inc., who had liability insurance with Travelers Insurance Company. Plaintiff settled with Roy and his insurer, Fidelity and Casualty Company, for its policy limits of $50,000.00 and released Roy only up to $50,000.00, reserving all rights to proceed against Roy for any damages in excess thereof. Plaintiff also settled with Goudeau’s insurer, Travelers, for $215,-000.00 and Travelers took a subrogation to all of Goudeau’s rights against Roy for indemnity. Travelers, a defendant in the original suit, filed a third party demand on its subrogation claim against Roy to recover the $215,000.00. In the first trial, the court held: (1) that the accident was caused solely by Roy’s fault; (2) that $265,000.00 was a reasonable sum for the minor’s damages; and (3) that Roy was an insured under Travelers’ policy. The original judgment dismissed Travelers’ claim against Roy. On appeal, this court reversed the holding that Roy was an insured under Travelers’ policy but remanded for consideration by the trial court of the effect of LSA-R.S. 9:3921, which was adopted in 1984, after the original trial but before judgment on appeal. That statute provides as follows:
“A. Notwithstanding any provision in Title III of Code Book III of Title 9 of the Louisiana Revised Statutes of 1950 to the contrary, every master or employer is answerable for the damage occasioned by his servant or employee in the exercise of the functions in which they are employed. Any remission, transaction, *1092 compromise, or other conventional discharge in favor of the employee for such damage shall be valid as between the damaged creditor and the employee and the employer shall have no right of contribution, division, or indemnification from the employee nor shall the employer be allowed to bring any incidental action under the provisions of Chapter 6 of Title I of Book II of the Louisiana Code of Civil Procedure against such employee.
B. The provisions of this Section are remedial and shall be applied retrospectively and prospectively to any cause of action for damages arising prior to, on, or after the effective date of this Section.”
Amended by Acts 1984, No. 331, § 10, eff. July 2,1984.
In the present case, the accident occurred in 1979, and the conventional discharge in favor of Roy and the subrogation in favor of Travelers were executed in 1983, before the effective date of the statute on July 2, 1984. Before that date, the jurisprudence was settled that if any injured party conventionally released the employee, he automatically released the employer, whose liability was in solido with the employee, although only vicarious as to the injured party. Williams v. Marion-neaux, 240 La. 713, 124 So.2d 919 (1960); Finley v. Bass, 478 So.2d 608 (La.App. 2 Cir.1985). Thus, plaintiff’s release of Roy up to $50,000.00 also released Goudeau up to $50,000.00 but plaintiff reserved the right to seek damages from Roy in excess of $50,000.00 for which Goudeau was also liable in solido with Roy. Then plaintiff settled with Goudeau and its insurer, Travelers, for $215,000.00 and Travelers took a subrogation to plaintiff’s claim against Roy for the $215,000.00. If the statute at issue is applied retroactively, Travelers loses its right to pursue its subrogation claim against Roy.
On remand, the trial judge gave written reasons in which he first holds that the statute is remedial because it expressly states that it is remedial, and therefore applies retroactively. Travelers cites Pounds v. Schori, 377 So.2d 1195 (La. 1979), in which the Supreme Court states the well-recognized rule as follows:
“Legislation which affects substantive rights may not be accorded retrospective application unless it contains language expressly indicative of legislative intent to make it retroactive, and then only when constitutional guarantees such as due process, vested rights and the inviolability of contracts will not be adversely affected thereby.”
Under this well-recognized rule, the mere fact that the Legislature says a statute is remedial and retroactive does not prevent the courts from holding the statute unconstitutionally impairs prior contractual rights. In the present case, the statute clearly destroys Travelers’ rights under its conventional subrogation against Roy. Such an application of the statute is unconstitutional.
The trial judge next invokes the Legislature’s police power as grounds for applying the statute to violate contractual rights, citing Francis v. Morial, 455 So.2d 1168 (La.1984). In that case, members of the New Orleans Aviation Board filed suit to have declared unconstitutional a statute giving neighboring cities and parishes the right to participate in the selection of members of the Board. Plaintiffs argued that the New Orleans Home Rule Charter prohibited such interference by the Legislature with its local government. The State argued in support of the statute that it was within the police power of the Legislature. Our Supreme Court stated the law as follows:
“The decisions of this court and others establish principles governing the exercise of the police power and the prevention of its abridgement with which the delegates were familiar. Although the police power is not susceptible to precise definition except on a case by case basis, it has been described generally as the inherent power of the state to govern persons and things, within constitutional limits, for the promotion of general security, health, morals and welfare. Fernandez v. Alford, 203 La. 111, 13 So.2d *1093 483 (1943); State v. Malory, 168 La. 742, 123 So. 310 (1929); VII Records 1445 (statement of Delegate Avant), 1454 (statement of Delegate Casey). The police power extends only to such measures as are reasonable, however, and all police regulations must be reasonable under all the circumstances. Schwegmann Bros, v. La. Bd. of Alcoholic Bev. Control, 216 La. 148, 43 So.2d 248 (1949); VII Records 1446 (statement of Delegate Avant). In order for a police measure to be reasonable, the means adopted must be reasonably necessary and appropriate for the accomplishment of legitimate objects falling within the scope of the power. Schwegmann Bros. v. La. Bd. of Alcoholic Bev. Control, 216 La. 148, 43 So.2d 248 (1949). Accordingly, the measure must tend toward the accomplishment or promotion of such purpose in a degree that is reasonably perceptible and clear. Id.; City of New Orleans v. Southern Auto Wreckers, 193 La. 895, 192 So. 523 (1939); Barrett v. State, 220 N.Y. 423, 116 N.E. 99 (1917); State ex rel. Wilcox v. Gilbert, 126 Minn. 95, 147 N.W. 953 (1914); St. Louis Southwestern Ry. Co. of Texas v. Griffin, 106 Tex. 477, 171 S.W. 703 (1914). To sustain legislation under the police power, the courts must be able to see that its operation tends in some degree to prevent an offense or evil or otherwise to preserve public health, morals, safety or welfare, Eros v. Powell, 137 La. 342, 68 So. 632 (1915); Hi-Lo Oil Co. v. City of Crowley, 274 So.2d 757 (La.App. 3d Cir.), writ refused, 277 So.2d 673 (La.1973), and if a statute discloses no such purpose, has no real or substantial relation to these objects, or is a palpable invasion of rights secured by fundamental law, it is the duty of the courts so to adjudge and thereby give effect to the constitution. Id.; State ex rel Galle v. N.O., 113 La. 371, 36 So. 999 (1904). It is only because the welfare of the whole people so far outweighs the importance of the individual whose rights are interfered with by an exercise of the police power that such interference with constitutional guarantees can be justified. See City of Shreveport v. Curry, 357 So.2d 1078 (La.1978); Appeal of Meserve, 120 N.H. 461, 417 A.2d 11 (1980); Town of Bay Harbor Islands v. Schlapik, 57 So.2d 855 (Fla.1952); 16A Am.Jur.2d, Constitutional Law, § 415. To be truly in the public welfare, therefore, legislation must confer upon the public benefits commensurate with its burdens upon other protected interests. Banjavich v. La. Licensing Bd. for Marine Divers, 237 La. 467, 111 So.2d 505 (1959); Direct Plumbing Supply Co. v. City of Dayton, 138 Ohio St. 540, 38 N.E.2d 70 (1941); 16A Am.Jur.2d, Constitutional Law, § 415. The police power does not justify an interference with constitutional rights which is entirely out of proportion to any benefit redounding to the public. Myers v. City of Defiance, 67 Ohio App. 159, 36 N.E.2d 162 (1940); Am.Jur.2d, Constitutional Law, § 415.”
Francis v. Morial, 455 So.2d 1168, at pages 1172, 1173 (La.1984).
Our Supreme Court held that the statute in question in Francis v. Morial did not sufficiently prevent an offense or evil or otherwise confer benefits on the general security, health, morals and welfare of the public to justify exercise of the Legislature’s police power.
Among the cases cited in Francis v. Mor-ial, supra, is Schwegmann Bros. v. La. Bd. of Alcoholic Bev. Control, supra, in which the court held a statute providing mandatory minimum price mark-ups for alcoholic beverages was not reasonably necessary to prevent injury to the general welfare of the people of the state. Also cited is City of Shreveport v. Curry, supra, in which an ordinance preventing frog gigging in only one area of the city (Cross Lake) was held to have no substantial relation to the general public welfare. See also American Finance Corporation of Coushatta, Inc. v. Small, 250 So.2d 768 (La.App. 2 Cir.1971), where the court held a statute which increased the wage exemption from seizure in garnishment proceedings could not apply to a preexisting garnishment judgment because this would unconstitutionally impair the means or remedy for the enforcement of the prior contract.
*1094 Under the above authorities, we conclude the statute at issue here does not broadly benefit the general health, morals, safety or welfare of the whole people of the state sufficiently to justify interference with the constitutional rights which Travelers has under its preexisting subrogation. Retroactive application of the statute would benefit only a small number of employees who happen to have been conventionally discharged from liability for damages before the statute took effect in 1984. We conclude that the importance of protecting the obligation of the contract in the present case outweighs the temptation to sanction use of the legislative police power.
The trial judge’s opinion gives the policy reasons for adoption of the statute. Of course, the Legislature has the right to adopt prospective statutes for whatever policy reasons it desires, but policy and social objectives alone do not justify a violation of the constitutional prohibition against retroactive statutes which impair contracts. American Finance Corporation of Coushatta, Inc. v. Small, supra.
The trial judge distinguishes Finley v. Bass, supra, on the basis that there the employee was taken to trial and judgment rendered against him and his employer in solido. There was no conventional discharge of the employee by the plaintiff. The court in Finley strictly construed LSA-R.S. 9:3921 to apply only where there had been a conventional release of the employee. We agree that Finley is distinguished from the present case in which there was a conventional discharge of the employee by the plaintiff up to, but not above the sum of $50,000.00.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of third party plaintiff, Travelers Insurance Company, and against the defendant, Cyrus Roy, for the sum of $215,000.00, together with legal interest from the date of judicial demand until paid, and all costs of these proceedings.
REVERSED AND RENDERED.
KNOLL, J., dissents and assigns reasons.