535 So.2d 1085 (1988)
Willie MIMS, et ux., Appellant,
v.
RELIANCE INSURANCE COMPANY, et al., Appellees.
No. 20065-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1988.
*1086 Ike F. Hawkins, Jr., Shreveport, for plaintiff-appellant.
Rountree, Cox & Guin by Billy J. Guin, Jr., Shreveport, for defendants-appellees.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
This litigation arose out of an automobile accident which occurred when two cars, traveling in the same direction on a four lane city thoroughfare, collided as the vehicle in the outer lane turned into the inner lane. The driver of the car in the inner lane and her husband sued the driver of the other car, his employer and insurer. From a judgment in their favor, plaintiffs appealed, asking for an increase in the awards.
On June 22, 1984 Hattie Mims and Harrell Mulkey were driving their respective vehicles west on Hollywood Avenue in Shreveport, with Mrs. Mims in the inside lane and Mulkey in the outside lane. At one point the outer lane was blocked off because of a road construction project, requiring that traffic in that lane turn into and merge with traffic in the inner lane. As Mulkey turned to the left into the inner lane his vehicle collided with the Mims car. This litigation ensued.
*1087 At the trial, held in March 1987, Mrs. Mims testified that, traveling in the inner lane, she let one car from the outer lane in ahead of her, proceeded forward, and Mulkey cut into her lane and ran into her. This testimony was corroborated by that of McGuire, an eyewitness.
Mulkey testified it appeared to him that Mrs. Mims had stopped to let another car into her lane and he followed, assuming that she would let him enter also. When he had gotten about 75% of his car into the inner lane, Mrs. Mims moved forward, causing her bumper and his fenderwell to become entangled. He said that both cars were barely moving, so there was no real impact. The only damage sustained by his car was a two inch scrape on the fenderwell.
As to her injuries, Mrs. Mims testified that her body did not hit any part of the car, but she was jerked forward, and though she did not experience pain immediately, her back and neck started hurting soon thereafter. That afternoon she visited her physician, Dr. Pineda, who hospitalized her for x-rays and tests. She was given pain medication and a back and neck brace. She continues to need the back brace, and it has also become necessary for her to use crutches to get around. She admitted suffering back and neck pains in the past, but says they were not nearly as severe as those she has experienced since the accident. She also admitted being previously treated for high blood pressure, gout and nervous problems.
She also testified that at the time of the accident, she was working as a maid for Mrs. Moses, but that afterwards she was only able to handle light housecleaning once a week. She also was forced to cut back to one day a week at a day care center where she worked part-time. She stated that she cannot get outside, walk up the stairs in her home, or drive for more than very short distances, and has trouble sleeping. Her back pain is constant and has recently worsened significantly. It was necessary for friends, Dora and Linda Sims, to come in and do her housework, and although she had no money to pay them, she told them she would do so when she was able.
Dr. Pineda testified that Mrs. Mims came to see him on June 22, 1984 complaining of neck and back pain, and saying she had been "jerked" in an automobile accident. He x-rayed her, gave her a collar and medication, and said he suspected acute sprain of the neck and lumbar spine. He saw her frequently during the next few months and gave her electric stimulation treatment. Her pain continued, however, so he hospitalized her in July and ordered traction. He saw her periodically after that, but her back has not gotten better. Before this accident, he had treated plaintiff for various ailments, including asthma, obesity, high blood pressure, and nerves. She had also been treated for preexisting marked degenerative disc disease, gout, spondyliolisthesis (a forward subluxation of the lower lumbar vertebrae on the sacrum), spinal stenosis (a narrowing of the spinal passage, through which the spinal cord and nerves pass), and osteoarthritis in "virtually every joint of her body". He stated that before this accident, plaintiff suffered periodic, but not constant, back pain. It was this witness's opinion that her prior pain was aggravated by this accident, and related her current pain to the accident rather than her pre-existing conditions.
However, the testimony of Dr. Smith, an orthopedic surgeon, does not support plaintiff's contention. He saw her on September 5, 1985, and found no objective symptoms for the pain she described. It was his opinion that she suffers from degenerative disc disease and that while her pre-existing condition was aggravated by this accident, her problems are longstanding and were not caused by the accident. According to him, the aggravating effects of the accident should have subsided within a year or two and her current symptoms merely reflect a natural progression of her condition.
Mr. Mims testified that for the past few years his wife had been taking care of him because he was sick, but that since the accident, she began feeling progressively worse. It has thus become necessary for him to take care of himself and take over *1088 her housecleaning duties generally. He corroborated his wife's testimony regarding her symptoms, and while he admitted she has suffered from back and neck pain in the past, he maintained that it has gotten much worse lately.
Mrs. Moses, who formerly employed plaintiff three days a week to clean house and care for her children, testified that plaintiff was working for her only one day a week at the time of the accident, as her children had left home some six years ago, and plaintiff was no longer needed fulltime. She was frequently home during the day, and said she observed that plaintiff was no longer able to perform any housework except light dusting and vacuuming after the accident, whereas before the accident she did all the housework and cooking for her family. The witness stated that plaintiff did not work on a regular basis after the accident, and a record of the days of work missed by plaintiff was introduced into evidence. It shows one day missed in July, 1984, and that plaintiff did not work for the witness from August 31, 1984 until May, 1985, when she returned to work sporadically. Her last day was September 26, 1986, when she quit because she said she could no longer handle the work. Mrs. Moses paid plaintiff $25/day.
Benny Gardner, another former employer of plaintiff, testified that plaintiff was unable to continue working on a regular basis at his nursery after the accident. She worked regularly one day per week at $25/day until just after the accident, however, and the witness stated he thought she missed approximately one month due to the accident.
Dora Sims, plaintiff's friend, testified that after the accident she helped plaintiff with housekeeping tasks that plaintiff was no longer able to perform. She provided these services from June through October, 1984, four hours per day, four days per week. Her daughter, Linda Sims, testified that when her mother (Dora) quit helping plaintiff in October, she took her mother's place. She worked six hours per day, five days per week, for nine months. Both witnesses stated they did not charge, and were not paid anything for their services.
Plaintiff also presented testimony of her neighbors, substantially corroborating her testimony regarding her reduction in physical activity after the accident.
In written reasons, the trial judge stated that both plaintiff and defendant were negligent in causing this accident, as defendant attempted to merge before it was safe to do so, and plaintiff should have noticed that he was in her lane. Noting that plaintiff's version of the accident was corroborated by the eyewitness, the judge concluded that defendant bore most of the responsibility for this accident as plaintiff's negligence was less significant than his.
Regarding damages, the judge found plaintiff had established medical expenses in the amount of $3,376.79, and explained that the remainder of the award to Mrs. Mims consisted of $10,000 in general damages and $100 for past lost wages ($20/day for 5 days lost from the nursery). Recovery for lost wages stemming from the employment relationship with Mrs. Moses, however, was denied without explanation. Recovery for future lost wages was also denied, based on the medical testimony as to the limited duration of the strain. Finding Mr. Mims's damages due to his wife's injury to be minimal, $400 was deemed a sufficient award for his loss of consortium. Finally, no employment relationship was found to exist between plaintiff and the Sims, so the claim for their compensation was denied.
The trial court found defendant 75% at fault and plaintiff 25% at fault in causing the accident. Judgment was therefore rendered in favor of plaintiff Hattie Mims and against defendants in the amount of $13,476.79, less $3,369.20, representing plaintiff's comparative fault, and in favor of Willie Mims and against defendants in the amount of $400.00 less $100.00.
Plaintiffs appealed, urging five assignments of error.
The issues presented by this appeal are as follows:
1) Whether the trial court's apportionment of fault is manifestly erroneous;

*1089 2) Whether the trial court's award to plaintiff of $10,000 for pain and suffering is inadequate and constitutes an abuse of discretion;
3) Whether the trial court abused its discretion by awarding an inadequate sum of $100 for lost wages;
4) Whether the trial court erred by refusing to award compensation for maid services obtained by plaintiff;
5) Whether the trial court's award of $400 for loss of consortium is inadequate.
I. Liability
The trial court found that plaintiff Hattie Mims was negligent in failing to notice that defendant was attempting to merge into her lane of traffic, or if she did notice, in failing to allow him to do so. This factual conclusion is amply supported by the record. Plaintiff complains that the trial judge apparently relied solely on the testimony of defendant and the deposition of his passenger, and erroneously found plaintiff comparatively negligent.
In a tort action where the only real issue is reasonableness of conduct, the determination and apportionment of fault are factual matters and will not be disturbed unless they are manifestly erroneous. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir. 1985); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We cannot say the trial judge's findings and assessment of witness credibility are clearly wrong. Therefore we will not disturb the fault apportionment on appeal.
II. Damages-Pain and Suffering
The trial court awarded plaintiff $10,000 for pain and suffering. Plaintiff claims this award is inadequate, and constitutes an abuse of discretion. This court is asked to increase the award to $50,000, which is claimed to be the minimum amount within reasonable discretion of the lower court.
Plaintiff argues that although she is a 63 year old, 220 lb. woman who stands 5'2", and suffers from various preexisting ailments, she experienced only "periodic aches and pains" before the accident but "constant, debilitating and frequently extreme" pain afterwards. It is further argued that the evidence establishes that this accident precipitated plaintiff's pain and this "accident-caused" pain continues.
Defendant contends the evidence clearly shows that plaintiff's current condition cannot be associated with this extremely minor accident which occurred four years ago, as defendant suffered a soft tissue injury of 2-3 months duration.
A tortfeasor takes his victim as he finds him and is responsible for all the natural and probable consequences of his conduct. Sepulvado v. Willis-Knighton Med. Center, 459 So.2d 152 (La.App. 2d Cir.1984), writ denied, 462 So.2d 197 (La.1984); Finley v. Bass, supra. Thus aggravation of a preexisting condition is compensable, and a negligent defendant must compensate his victim to the full extent of the aggravation of the preexisting injury. Alexander v. Leger, 423 So.2d 731 (La.App. 3d Cir.1982), writ denied, 430 So.2d 75 (La.1983); Breaux v. Lore, 487 So.2d 558 (La.App. 4th Cir.1986). Before recovery can be granted for a preexisting condition, however, a causative link between the accident and the victim's current status must be established. Berthelot v. Imes, 459 So.2d 1384 (La.App. 1st Cir.1984).
The law is also clear that a trial court's finding of pain and suffering is entitled to much deference, as are all factual findings, and will be disturbed on appeal only upon a clear showing of manifest error. The assessment of monetary damages is discretionary with the trial court and a judgment cannot be disturbed absent a showing of abuse of discretion. La.C.C. Art. 1999; Arceneaux v. Domingue, supra; Finley v. Bass, supra.
As defendant points out, the trial judge found that this accident was minor and the vehicles were traveling at a very low rate of speed. He noted that plaintiff admitted the immediate effect of the impact was to move her car only 1-3 feet, and cause her to be merely jarred around. She further admitted that her body did not make contact *1090 with any part of the inside of her car. Her property damage amounted to $261.20.
Although plaintiff places emphasis on the opinion of Dr. Pineda that her current pain is related to this accident rather than her preexisting conditions, (i.e. that her prior pain/preexisting condition was aggravated by the accident, and that the aggravation continues at this time), the testimony of Dr. Smith, an orthopedic specialist, indicated that the effects of this accident (soft tissue injury) on these preexisting conditions would have ended in about 3 months to 1 or 2 years, and that plaintiff's present pain is thus unrelated to this accident. Dr. Smith stated he believed plaintiff's current pain represents a naturally continuing progression of her preexisting condition. He found no objective findings enabling him to relate any of plaintiff's pain to this accident, and did not assign any percentage of disability as a result of this accident.
In light of this evidence contained in the record, we cannot say the trial judge abused his discretion in assessing plaintiff's damages for pain and suffering at $10,000. We are referred to several cases involving allegedly similar situations which warranted more substantial awards, but we find none applicable to this case. Moreover, it is only upon a finding of abuse of discretion in an award of damages that resort to prior awards by an appellate court is proper for the purpose of determining the amount of an appropriate award. Reck v. Stevens, 373 So.2d 498 (La.1979).
III. Loss of Consortium
Finding the damages suffered by Mr. Mims due to his wife's accident-related injuries to be minimal, the trial court awarded him $400 for loss of consortium. We think this is reasonable, based on the evidence contained in the record, and find no abuse of discretion.
IV. Lost Wages
The trial court awarded plaintiff $100 for lost wages, representing five days lost from employment with the nursery, at $20/day. However, all recovery for lost wages stemming from plaintiff's employment with Mrs. Moses was denied without explanation. The testimony concerning the number of days plaintiff missed at the nursery is unclear, but the trial judge found that she proved she missed five days and awarded $100. Additionally, we think the evidence clearly establishes that plaintiff missed approximately 7-8 months, (at 1 day per week), from her job with Mrs. Moses. Lost wages need not be proven with precision; reasonable certainty is the standard. Holman v. Reliance Ins. Co., 414 So.2d 1298 (La.App. 2d Cir.1982), writ denied, 420 So.2d 164 (La.1982). We see no reason for the trial judge's denial of recovery for these lost wages, and will therefore increase the award for lost wages to $750.
V. Compensation for Housekeeping Services
Louisiana law allows, as an element of damages, reasonable housekeeping expenses necessitated by the incapacity of an injured spouse. Cushman v. Fireman's Fund Ins. Co., 401 So.2d 477 (La.App. 2d Cir.1981); Prevost v. Cowan, 431 So.2d 1063 (La.App. 1st Cir.1983); Hickman v. Bawcom, 149 So.2d 178 (La.App. 3d Cir. 1963); Davis v. Powell, 141 So.2d 679 (La. App. 1st Cir.1962); Little v. State Farm Mutual Automobile Insurance Company, 136 So.2d 457 (La.App. 1st Cir.1962).
The trial judge stated that he based his denial of recovery for the services rendered by Dora and Linda Sims on the lack of employment relationship between plaintiffs and the Sims. However, in Bordelon v. Aetna Casualty & Sur. Co., 494 So.2d 1283 (La.App. 2d Cir.1986), this court held that the gratuitous nature of the medical attention and nursing services rendered in that case did not preclude the injured party from recovering the value of such services. While Bordelon dealt with nursing services, we see no reason to distinguish between nursing and housekeeping services. Therefore we do not find an employment relationship necessary for recovery of the value of the housekeeping services rendered to plaintiff in this case.
However, Bordelon further held that before recovery for this element of damages may be had, the need for the services must be shown, the reasonableness of the fee *1091 must be established, and the extent and duration of the services must be proven. In situations involving medical services, proof of the necessity of the services will usually consist of doctors' orders. In this case, however, we believe Hattie and Willie Mims' testimony, corroborated by the Sims, that Mrs. Mims was unable to perform her customary household duties immediately following the accident is sufficient to establish the necessity of the Sims' services. The record also contains testimony establishing that Dora Sims rendered approximately 256 hours of housekeeping services and Linda Sims rendered 1080 hours.
We therefore award plaintiffs compensation for the housekeeping services rendered by Dora and Linda Sims in the amount of $2500.
Consequently, we calculate the increased awards as follows:

$2500.00 ......housekeeping services
 750.00 ......loss of wages
________
$3250.00
 812.50 ......less 25% for comparative
 negligence of Mrs. Mims
________
$2437.50 ......net increase

Conclusion
For these reasons, the judgment of the trial court is AMENDED to increase the award to plaintiffs by $2437.50, and as amended, is AFFIRMED. Cost of appeal is assessed to defendants-appellees.